**ISLAND CREEK COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SHENEGO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 18, 1994.

Decided Dec. 19, 1994.

---

**5.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10601.

Paul E. Sutter, for petitioners.

Blair V. Pawlowski, for respondent.

Before DOYLE and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.[1]

Before the Court is the appeal of Island Creek Coal Company (Employer) from an order of the Workmen's Compensation Appeal Board which affirmed a referee's order reinstating the total disability benefits of Joseph Shenego (Claimant).

Claimant worked for approximately twenty-nine years in coal mines where he was exposed to coal dust beginning in 1939 until his last day of work for Employer on February 2, 1980. Thereafter, he filed a petition for total disability benefits alleging that he was disabled as a result of coal workers' pneumoconiosis as of September 18, 1980. The referee, after a hearing, determined that Claimant suffered from pneumoconiosis caused by his employment and that he was disabled by that disease, but, pursuant to a stipulation of the parties that light work was available within Claimant's physical limitations, the referee only awarded Claimant partial disability benefits. The payment of Claimant's disability benefits commenced on October 14, 1980, and continued for 500 weeks, until May 14, 1990, when those benefits were exhausted.[2]

■ On October 29, 1990, five months after the exhaustion of his partial disability benefits, Claimant filed a petition for reinstatement of compensation.[3] Claimant presented the medical testimony of Dr. Vijay K. Malhotra, who testified that based on x-ray analysis, Claimant's condition had progressed from simple pneumoconiosis to complicated pneumoconiosis during the period from 1980 until 1990. Dr. Malhotra also testified that he could not offer an opinion as to Claimant's work capabilities in 1990 as compared to his capabilities in 1980.

Employer presented medical evidence in the form of a report by Dr. George W. Strother, who examined Claimant in February 1991. He also testified that Claimant's condition had progressed from simple pneumoconiosis to complicated pneumoconiosis. In the opinion of both doctors, Claimant could not return to work in the *coal mines* (Claimant's time-of-injury employment).

---

1. This matter was reassigned to the writer on September 22, 1994.

2. *See* Section 306(b) of The Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.

3. Since his benefits have been exhausted, Claimant is technically seeking neither a modification nor a reinstatement of benefits. A reinstatement petition is filed when a claimant's benefits have been suspended or terminated. A modification petition suggests that a claimant is currently receiving benefits which the petitioner seeks to change. Claimant in this case is now in a "hy-brid" situation where he is receiving no current benefits, since his eligibility for partial disability benefits has been exhausted, but his "benefits" have been neither suspended nor terminated. However, Section 413 of the Act, 77 P.S. § 772, does not make a distinction in the petitions to be filed for reinstatement and modification. Accordingly, the form of the petition is not controlling and such petition will be deemed to have been filed pursuant to whichever section of the Act is appropriate. *See North Philadelphia Aviation Center v. Workmen's Compensation Appeal Board (Regan)*, 121 Pa.Commonwealth Ct. 633, 551 A.2d 609 (1988).

The referee accepted part of each doctors' testimony and found as fact that Claimant's medical condition had worsened since the last award of benefits in 1980. From this evidence he concluded that Claimant's disability status had changed from partial to total disability, and ordered Employer to pay Claimant total disability benefits commencing September 1, 1990. Employer appealed to the Board, which affirmed the referee's order. This appeal followed.

The sole issue for our review is whether there is substantial evidence to support the Board's conclusion that Claimant's "disability" increased and he is, therefore, entitled to total disability benefits.

■ This issue has been faced recently by the Supreme Court in *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), and by this Court in *Meden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, — Pa.Commonwealth Ct. —, 647 A.2d 620 (1994), and *Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.)* — Pa.Commonwealth Ct. —, 647 A.2d 624 (1994). All of these cases hold that where a claimant has exhausted his partial disability benefits and seeks total disability benefits, he must prove that his *loss of earning power has increased,* not only that his medical condition has worsened and that he can no longer perform his time-of-injury job. *Dillon; Meden; Volk; see also Kunicki v. Workmen's Compensation Appeal Board,* 56 Pa.Commonwealth Ct. 72, 423 A.2d 1368 (1981).

■ In *Dillon,* the claimant suffered from a work-related injury and in March 1981 he was awarded partial disability benefits consistent with a stipulation by the parties that light duty work was available to the claimant within his medical limitations. In July 1982, the claimant filed a petition to modify his benefits to total disability benefits because he had searched for some type of light work but was unable to find any. The Board, relying on this Court's decision in *Mancini v. Workmen's Compensation Appeal Board,* 64 Pa.Commonwealth Ct. 484, 440 A.2d 1275 (1982), dismissed Dillon's petition because he had failed to adduce evidence which showed a change in his *physical* condition since the date of the initial award. This Court affirmed, and citing *J & L Steel Corp. v. Workmen's Compensation Appeal Board (Shutak),* 145 Pa.Commonwealth Ct. 99, 602 A.2d 467, *petitions for allowance of appeal denied,* 530 Pa. 657, 608 A.2d 32, 530 Pa. 662, 609 A.2d 169 (1992), and *Airco–Speer Electronics v. Workmen's Compensation Appeal Board,* 17 Pa.Commonwealth Ct. 539, 333 A.2d 508 (1975), held that where the claimant petitions to modify compensation benefits from partial disability to total disability, he has the burden of producing competent evidence of a change in his physical condition since the prior award. The Supreme Court reversed, stating that the "change in physical condition" requirement was derived from an unwarranted extension of prior case law, and a flawed conception of "disability" under the Act:

> As we emphasized in *Kachinski* [*v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987) ], going back to early cases interpreting the Act, 'we determine the degree of a worker's disability by reference to how the injury affected his earning power.' 516 Pa. at 248, 532 A.2d at 378, citing *Woodward v. Pittsburgh Engineering and Construction Co.,* 293 Pa. 338, 143 A. 21 (1928) ('The disability contemplated by the act is the loss, total or partial, of the earning power from the injury.') See also *Unora v. Glen Alden Coal Co.,* 377 Pa. 7, 104 A.2d 104 (1954) ('In the interpretation of the Workmen's Compensation Act ... the word "disability" is to be regarded as synonymous with "loss of earning power".'); *Petrone v. Moffat Coal Co.,* 427 Pa. 5, 233 A.2d 891 (1967); *Barrett v. Otis Elevator Co.* 431 Pa. 446, 246 A.2d 668 (1968).

> To the extent that cases ... recognized disability (in the physical sense) as an element *distinct* from loss of earning power, they deviated from proper interpretation of the Act. Inasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may

change from partial to total or vice versa based on a change in one with or without a change in the other.

*Dillon,* 536 Pa. at 501, 640 A.2d at 391–92 (emphasis in original). Accordingly, the court held that where a claimant seeks to increase his partial disability benefits, he must show that through no fault of his own, his loss of earning power has increased. *Id.; see also Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990).

The facts in *Volk* are similar. In that case the claimant was awarded partial disability benefits for his work-related coal workers' pneumoconiosis, based on a stipulation of the parties that light-duty work was available to the claimant within his physical limitations. The claimant, however, did not perform any work. After receiving 323 weeks of compensation benefits he filed a petition seeking total disability benefits. He adduced testimony that his disease had gotten worse and that he could not return to work *as a coal miner.* The referee and the Board denied his petition. On appeal, the claimant argued that he had sustained his burden of proving that his medical condition had worsened since the award for partial disability and that it was improper to bind him to the stipulation that light-duty work was available. This Court affirmed the Board, holding that the claimant's own doctor had testified that although the claimant's physical condition had worsened he was able to perform light-duty work that did not involve exposure to dust. Accordingly, the claimant failed to sustain his burden of proving he could no longer perform light-duty work that was available at the time the award for partial disability benefits.

Our decision in *Meden* is virtually indistinguishable from the case at bar. In *Meden* the claimant was also awarded partial disability benefits for his work-related coal workers' pneumoconiosis based on a stipulation that light work was available that he could perform. After receiving partial disability benefits for 500 weeks, the statutory maximum, he petitioned for total disability benefits. The referee, and on appeal the Board, denied the claimant's petition concluding that, although his medical condition had changed, he

had failed to prove that he was no longer able to perform his light-duty job. This Court affirmed, holding that:

> a claimant who has exhausted his or her partial disability benefits and seeks benefits for total disability, has the burden of proving that his or her disability, that is, loss of earning power, has increased, not just that his or her medical condition has worsened.

*Meden,* —— Pa.Commonwealth Ct. at ——, 647 A.2d at 623 (citation omitted). We observed that, like the claimant in *Volk,* the claimant's doctor testified that he could no longer perform work as a coal miner, but that he *could* do light work such as ticket-taking, desk work, or operating an elevator.

The result here is the same. Claimant received 500 weeks of partial disability benefits. By the terms of the Act, he is no longer eligible for partial disability benefits for this work-related injury or disease regardless of whether his earning power remains at a reduced level because of that injury or disease. Section 306(b) of the Act, 77 P.S. § 512. Thus, the deterioration of his medical condition is virtually irrelevant unless it translates into an increase in his loss of earning power such that he can no longer perform any job. *Volk; Meden.*

Both Claimant's and Employer's medical expert testified that Claimant could no longer work in the hazardous environment of the coal mines. That alone is not enough to sustain Claimant's burden of proof, other than demonstrating the fact that Claimant still suffers from his work-related disease; in fact, it is a rebuttable presumption that Claimant is medically unable to perform his time-of-injury job where his benefits have not been terminated (which relieves Employer of liability). *Pieper; Volk.* What is critical is that *neither* doctor provided *any* testimony concerning Claimant's work capability. In fact, Claimant's doctor admitted that he had no basis to form an opinion regarding the type of work Claimant may be able to perform:

> Q. Doctor, x-rays tell you absolutely nothing about one's respiratory capabilities, is that correct?

A. They help to diagnose the pneumoconiosis, but they don't tell you one's work capability, that is correct.

. . . .

Q. Okay, so you have no idea whether his work capabilities are the same, worse or better than they were in 1980, is that correct.

A. That is correct.

Deposition of Dr. Malhotra at 10–11.

Therefore, we hold that as a matter of law, Claimant failed to sustain his burden of proving his entitlement to total disability benefits. The decision of the Board is reversed.[4]

### ORDER

NOW, December 19, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

DELLA PORTA, Senior Judge, dissents.

---

**4.** Although the issue was not raised, we note that Claimant would have been precluded from recovering benefits since he is retired. Claimant is now approximately 72 years old, and admitted on cross examination that he was officially retired. (Notes of Testimony, 1/17/91 at 12.) The Supreme Court recently held that a claimant who has voluntarily retired from the work force is not entitled to receive benefits for an occupational disease claim, since it is his retirement, not his disability, which causes his loss of earning power. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).