**Charles M. DIFFENDERFER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (RABESTOS MANHATTEN, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 23, 1994.

Decided Dec. 19, 1994.

---

Thomas N. Cooper, for petitioner.

Michael A. Vanasse, for respondent.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Before us is the appeal of Charles M. Diffenderfer (Claimant) from an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision dismissing Claimant's petition to reinstate his total disability benefits after the exhaustion of partial disability benefits. .

Claimant sustained a work-related injury to his back in 1976 for which he received total disability benefits pursuant to a notice of compensation payable issued by Rabestos Manhatten, Inc. (Employer). Later that year he returned to work in a light-duty position and was paid partial disability benefits under a supplemental agreement. After five hundred weeks, on April 30, 1988, Claimant's partial disability benefits were exhausted, and a second supplemental agreement was executed to reflect the end of Claimant's entitlement.

On October 13, 1989, more than a year after the expiration of Claimant's partial disability benefits, Claimant was laid off from his light-duty job as a "sintered button operator."[1] On January 31, 1990, Claimant filed a claim petition alleging (1) an injury to his right hip and (2) that he was not able to perform his job because Employer had increased the required production rate, and due to his restrictions he could no longer keep up.

At the hearing Claimant testified on his own behalf. He stated that he had been working under restrictions since his 1976 injury, and that these restrictions had not changed since that time. *He also testified that he did not sustain a new injury or an*

---

1. Claimant on January 15, 1990, returned to work for Employer as a file clerk, which paid wages higher than Claimant's pre-injury wage; he was laid off from that position in mid-March of 1990.

*aggravation of the 1976 injury prior to his layoff.*

A statement of work restrictions imposed by Dr. Daniel Good detailing Claimant's physical limitations as of October 21, 1986, was submitted into evidence, in addition to the medical testimony of Dr. Eugene K. Engle.[2] Since Dr. Engle admitted on cross-examination that his notes do not indicate that Claimant complained of an aggravation or a new injury occurring in October 1989, the referee found that Dr. Engle's testimony failed to support Claimant's allegation of a new injury or aggravation. Accordingly, the referee dismissed Claimant's petition because Claimant had failed to sustain his burden that his injury was work related.

Claimant appealed to the Board, arguing that the referee should have directed the reinstatement of his benefits because employer failed to demonstrate the availability of work within Claimant's restrictions. The Board agreed and remanded the case to the referee to be considered under the standard for reinstatement after suspension enunciated in *Pieper v. Ametek–Thermox Instruments Divisions,* 526 Pa. 25, 584 A.2d 301 (1990). On remand, the referee found *Pieper* to be inapplicable because Claimant's partial disability benefits were exhausted, not suspended, and held that Claimant had failed to sustain his burden of demonstrating that his medical condition had worsened or changed as required by this Court's decision in *Kunicki v. Workmen's Compensation Appeal Board,* 56 Pa.Commonwealth Ct. 72, 423 A.2d 1368 (1981). The Board affirmed, and this appeal followed.

The sole issue before us on appeal is whether Claimant sustained his burden of proof for reinstatement of total disability benefits where he had already received partial disability benefits for five hundred weeks.

■ This Court has repeatedly outlined Claimant's burden of proof in a petition to reinstate total disability benefits after the expiration of partial disability benefits:

a claimant who has exhausted his or her partial disability benefits and seeks benefits for total disability, has the burden of proving that his or her disability, that is, loss of earning power, has increased, not just that his or her medical condition has worsened.

*Meden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* —— Pa.Commonwealth Ct. ——, ——, 647 A.2d 620, 623 (1994) (*en banc*) (citation omitted); *see also Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.),* —— Pa.Commonwealth Ct. ——, 647 A.2d 624 (1994). This burden must be established by credible evidence of a more definite and specific nature than that required when establishing loss of earning power from a work-related injury in the initial claim petition. *Kunicki.*

Claimant argues that pursuant to the supplemental agreement executed after his partial disability benefits had expired, he was in a suspension status; therefore, his only burden was to show that through no fault of his own his earning power is once more adversely affected. Since he was laid off from his light-duty job through no fault of his own, Claimant contends that he is entitled to total disability benefits. We disagree; if it were otherwise, partial disability benefits would continue *ad infinitum,* obliterating the finite nature of those benefits imposed under Section 306(b) of the Workers' Compensation Act (Act),[3] 77 P.S. § 512.

■ A suspension, under the Act is properly entered where a claimant is partially disabled but is receiving wages equal to or in excess of what he earned in his pre-injury job. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), *petitions for allowance of appeal denied,* 522 Pa. 606, 562 A.2d 828, and, 522 Pa. 607, 562 A.2d 829 (1989). Although Employer remains liable for the consequences of his work-related injury, his earning power is no longer affected by his physical disability and he receives no benefits. *Pieper.* Conse-

---

**2.** Dr. Engle is Claimant's family physician and has only been peripherally involved in the treatment of Claimant's back injury.

**3.** Act of June 2, 1915, P.L. 736, *as amended.*

quently, where a claimant seeks to have benefits reinstated after a suspension, he only needs to prove that the reason for the suspension of benefits no longer exists, that is, that his earning power is once more adversely affected by his physical disability. *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.)*, 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983). The claimant's physical disability is presumed to continue, thus expert medical evidence of a change in condition is not necessary. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994). Obviously, then, when a claimant is laid off from the employment that was the basis for the suspension of his benefits, his earning power is adversely affected through no fault of his own, and he is entitled to benefits unless the employer provides available work within his physical restrictions. *Busche.*

In contrast, a totally different legal relationship exists between a claimant and an employer where the claimant is partially disabled and is gainfully employed in some capacity, but it is a position not financially equal to his time-of-injury earning power. In this situation benefits are not suspended but are paid at the partial disability rate pursuant to Section 306(b) of the Act, which provides in relevant part:

> For disability partial in character ... sixty-six and two-thirds per centum of the difference between the wages of the injured employe, ... and the earning power of the employe thereafter; ... This compensation shall be paid during the period of such partial disability ... *but for not more than five hundred weeks.*

77 P.S. § 512 (emphasis added). Thus, it is clear that if partial disability benefits are paid, they are paid for 500 weeks only (approximately 9 years and 8 months) and after those benefits are exhausted, that ends the employer's liability *for that disability.*

Although Claimant's benefits here were "suspended" by the terms of the supplemental agreement, it was because his benefits were exhausted, not because Claimant's earning power was in any way more adversely affected by his medical condition. The term "suspended," used by the parties in this appeal to indicate the end of Claimant's entitlement to partial disability benefits, was inartfully chosen and was used inappropriately. In this case, the status of a "termination" would be more analogous, because Employer's liability for partial disability benefits had ceased. *See Pieper.* Since Claimant can no longer receive partial disability benefits as a matter of law, he has the burden of proving that he is further entitled to total disability benefits, *Meden, Volk,* and he is only entitled to total disability benefits if he has suffered a complete loss of earning power from his present position (the light-duty job) through either a new injury or an aggravation of his old injury. Because his present ongoing inability to work at his time-of-injury job (*i.e.*, working in the mines) would only entitle him to continued partial disability benefits, which now are exhausted, there is nothing left for him to receive.

In conclusion, since Claimant failed to adduce any evidence, medical or otherwise, that he had any additional loss of earning capacity,[4] the Board correctly dismissed his petition for total disability benefits.

Affirmed.

### ORDER

NOW, December 19, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

4. What is not presented is the allegation that Claimant suffered further loss of earning capacity from his present, light-duty position *because of worsening medical reasons.* In such a case, depending on the specific facts presented, Claimant would logically have to prove that he can no longer perform his present light-duty job. If he did, he would be entitled to total disability benefits unless Employer produced a "lighter" light-duty job.