756 A.2d 661

**Francis STANEK, Appellant,**

**v.**

**WORKER'S COMPENSATION APPEAL BOARD (GREENWICH COLLIERIES), Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 1999.

Decided July 14, 2000.

412

Blair V. Pawlowski, Ebensburg, for Stanek.

John J. Bagnato, Johnstown, for Greenwich Collieries.

David Hawkins, James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for WCAB.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

In this appeal, the Court is asked to assess a workers' compensation claimant's burden in seeking total disability benefits, having previously exhausted entitlement to compensation for partial disability.

After working for forty-three years in the coal mining industry for Appellee Greenwich Collieries ("Employer"), Appellant Francis B. Stanek ("Claimant") ceased work, sought compensation for disability resulting from coal workers' pneumoconiosis and was awarded partial disability benefits on such basis, effective November 10, 1981. Thereafter, he received $257.38 per week for a period of 500 weeks, following which,

by operation of law, Employer's obligations relative to the partial disability ceased. *See* 77 P.S. § 512. On January 29, 1993, at seventy-two years of age, Claimant filed a reinstatement petition contending that his pulmonary condition had worsened to such an extent that he had become totally disabled.[1] At hearing, Claimant testified in support of the petition and offered testimony from an examining physician, Dr. Gordon A. Gress, to the effect that Claimant's pulmonary condition had deteriorated progressively and substantially.[2] Dr. Gress testified to his review of the report of Claimant's treating physician (containing the opinion that Claimant was totally disabled) and indicated that Claimant's condition precluded him from performing most jobs. Dr. Gress conceded, however, that there were some forms of sedentary employment Claimant could perform consistent with his physical limitations.[3] The WCJ awarded benefits; however, the Workers' Compensation Appeal Board (the "Board") reversed, holding that Employee had not met his burden of proof under *Meden v. WCAB (Bethenergy Mines, Inc.)*, 167 Pa.Cmwlth. 68, 71, 647 A.2d 620, 622 (1994)(*en banc* ), *appeal denied*, 540 Pa. 624, 657 A.2d 494 (1995), and the Commonwealth Court affirmed the Board's decision, also relying upon *Meden.* We allowed appeal to determine whether *Meden* articulates an appropriate standard in circumstances involving a post–500–week claim for total disability benefits.

1. Claimant previously had filed a modification petition during his period of eligibility for partial disability benefits on similar grounds, which was denied on a workers' compensation judge's finding that Claimant's condition had not changed since he was awarded partial disability benefits.

2. Claimant testified to increasing shortness of breath and coughing with gray mucus, requiring him to limit his life activities and make adjustments in his sleeping position to avoid gagging and choking. Dr. Gress confirmed a deterioration of Claimant's lung capacity and testified to his diagnoses of kyphoscoliosis, early clubbing of the fingers, and abnormal sounds in the lungs on inhalation.

3. Employer took the position that Claimant's medical condition had not changed since his receipt of compensation for partial disability and offered medical evidence to that effect; however, the Workers' Compensation Judge (the "WCJ") credited Claimant's evidence.

The relevant statutory provisions are Sections 306(b) and 413(a) of the Workers' Compensation Act.[4] Section 306(b) establishes a general rule setting compensation for partial disability at sixty-six and two-thirds percent of the difference between pre-injury wages and post-injury earning power. 77 P.S. § 512(1). Compensation is available throughout the period during which the employee's earnings capacity is affected, *"but for not more than five hundred weeks,"* 77 P.S. § 512(1)(emphasis added); thus, the period during which partial disability benefits are available is capped at approximately nine and one-half years. Section 413(a) provides for, among other things, modification of benefits "at any time" upon proof that a claimant's disability has increased, 77 P.S. § 772, for example from a partial to a total loss. Increased benefits generally are available as of the date on which the change is demonstrated to have occurred; however, Section 413(a) generally limits the availability of review, modification or reinstatement to claims filed within three years after the date of the most recent payment of compensation, and further provides that, where compensation has been suspended because the claimant has returned to work with earnings equal to or greater than his pre-injury wages, benefits may be resumed at any time during the 500–week period of eligibility for partial disability benefits. 77 P.S. § 772.

In *Stewart v. WCAB (Pa Glass Sand/US Silica)*, 562 Pa. 401, 756 A.2d 655 (2000), we considered these statutory provisions in light of an employer's argument that the final proviso of Section 413(a) operates as an absolute bar to a post–500–week claim on the part of a claimant who has received a full measure of partial disability benefits available under Section 302(b). While we rejected this argument, we did not assess the burden that must be borne by a claimant seeking total disability benefits under these circumstances. Claimant contends that the Commonwealth Court, in *Meden* and its progeny, has overstated the applicable burden by essentially requiring a showing that a claimant is totally disabled in a pure

4. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4) (the "Act").

medical sense. He urges this Court to reject such interpretation, asserting that a claimant in his circumstance should be required to demonstrate only that his work-related condition has worsened—according to Claimant, core principles of workers' compensation jurisprudence require allocation of the burden to establish job availability to the employer.[5]

In *Meden,* an *en banc* Commonwealth Court examined a workers' compensation referee's decision to deny a claim similar to that asserted in the present appeal, in which a retirement-age claimant, suffering from coal workers' pneumoconiosis, sought compensation for total disability after having exhausted his entitlement to partial disability benefits. The claimant testified to and presented medical evidence regarding the deterioration of his physical condition; the medical testimony included the concession that the claimant had the ability to perform some forms of sedentary work; and no vocational or other evidence was offered to further demonstrate the effect of the deterioration of his physical condition upon his earning ability. The Commonwealth Court found that such evidence was insufficient to meet Section 413(a)'s requirement of increased disability (or loss of earning power), reasoning that the assessment of disability has a physical component (physical capacity to work) and a vocational one (availability of suitable employment), and mere deterioration of a claimant's medical condition addresses only the first of these. *See Meden,* 167 Pa.Cmwlth. at 72–73, 647 A.2d at 623 (stating that "simply arguing that a claimant's physical condition has changed without presenting evidence of its effect on his ability to work at his light duty job cannot satisfy a claimant's burden of proof"). Thus, the Commonwealth Court determined that it was necessary for a claimant in such circumstances to present evidence that he could no longer perform work that was within

---

**5.** In *Stewart,* we recognized that a claim for total disability benefits asserted after the expiration of the period of eligibility for partial disability benefits has attributes of both modification and reinstatement claims. *See Stewart,* 562 Pa. at 411, 756 A.2d at 655. For convenience sake, particularly in connection with comparison to other claims discussed in the pertinent decisional law, we have generally referred to Claimant's effort in this case as one to obtain modification.

his physical limitations at the time of the original award. *Id.* at 73, 647 A.2d at 623.

As the centerpiece of its analysis, the *Meden* court equated the burden upon a claimant seeking modification to obtain total disability benefits subsequent to the expiration of the statutory period of eligibility for partial disability benefits with the standard announced in *Dillon v. WCAB (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), in which this Court clarified the burden upon a claimant seeking modification from partial to total disability benefits *within* the 500–week period of eligibility. Further, the *en banc* Commonwealth Court cited the panel decision in *Volk v. WCAB (Consolidation Coal Co.)*, 167 Pa.Cmwlth. 75, 647 A.2d 624 (1994), also a case involving a pre–500–week modification petition, which was decided simultaneously with *Meden*.[6] Reciprocally, the *Volk* panel cited to *Meden* in connection with the following articulation of the burden borne by a claimant seeking modification within the period of eligibility for partial disability benefits:

At the time [the c]laimant was awarded partial disability benefits, the referee found that [the c]laimant was medically disabled, but his loss of earning power (or disability for the purposes of worker's compensation), was mitigated by the availability of light duty work which he could perform at a lower wage. Therefore, [the c]laimant must prove that his physical disability has changed and that he is unable to perform his light duty job, and, therefore, that he has suffered a further loss of earning power. This proof must be made by precise and credible evidence which is of a more definite and specific nature than that upon which the initial

6. The *Meden* court also cited to *Kunicki v. WCAB (Felice)*, 56 Pa. Cmwlth. 72, 423 A.2d 1368 (1981); however, it did not develop the content of *Kunicki* in any way. This was an unfortunate oversight, since *Kunicki* recognized that the differential legislative treatment of modification claims asserted in the pre- and post–500–week settings calls for the imposition of different standards of proof. *Id.* at 75, 423 A.2d at 1370 (finding that the claimant pursuing modification after the expiration of the period of eligibility for partial disability compensation "had the burden of proving an increase in his disability by precise and credible evidence of a more definite and specific nature than that required to obtain compensation initially").

compensation is based. Only when this burden has been satisfied does the burden shift to [the e]mployer to demonstrate the availability of "lighter" light duty work within [the c]laimant's new physical limitations.

*Id.* at 82–83, 647 A.2d at 627–28 (citations omitted).

*Meden* and *Volk* thus set forth essentially identical standards applicable to pre-and post–500–week claims for modification. If there is any significant difference, by incorporating the "precise and credible" language which was not present in *Meden, Volk* would seem, perversely, to set forth a more exacting standard applicable to a petition filed in the pre–500–week setting.[7] Unfortunately, this overlap, the *Meden* decision's emphasis upon *Dillon* as articulating a controlling standard pertaining to post–500–week cases, and the corresponding failure to distinguish between the pre- and post–500–week settings in terms of the burden of proof applicable to modification claims caused confusion in the cases that followed. The Commonwealth Court cited *Meden* and *Volk* essentially interchangeably, *see, e.g., Diffenderfer v. WCAB (Rabestos Manhattan, Inc.)*, 651 A.2d 1178, 1180 (Pa.Cmwlth.1994) (setting forth a claimant's burden of proof in a post–500–week case with reference to both *Meden* and *Volk* ), *appeal denied,* 540 Pa. 642, 659 A.2d 561 (1995); indeed, in *Island Creek Coal v. WCAB (Shenego),* 651 A.2d 1174, 1176 (Pa.Cmwlth.1994), the court suggested, incorrectly, that *Meden, Dillon* and *Volk* were all post–500–week cases. Prior to the decision in *Burton v. WCAB (Hershey Automatic),* 711 A.2d 596 (Pa.Cmwlth. 1998), all of the Commonwealth Court's decisions in this area suggested that a workers' compensation judge's task upon assessment of a modification petition in both the pre- and post–500–week contexts was essentially coextensive.

7. The "precise and credible" language would more appropriately attach to *Meden,* since the cases from which it derives involve claims lodged at or after the expiration of the period of eligibility for compensation for partial disability. *See Kunicki,* 56 Pa.Cmwlth. at 75, 423 A.2d at 1370; *see also Klingler v. WCAB (Rupert),* 50 Pa.Cmwlth. 335, 337, 413 A.2d 432, 433 (1980), *cited in Volk,* 167 Pa.Cmwlth. at 83, 647 A.2d at 628. *See generally supra* note 6.

In *Burton,* however, the Commonwealth Court acknowledged the critical distinction between pre- and post–500–week cases and attempted to clarify the relationship between its decisions in *Meden* and *Volk.* Before the court was a decision of the Board to affirm the denial of a modification petition, filed well within the 500–week eligibility period, which sought an increase in benefits based upon a worsening of the claimant's medical condition and a corresponding loss of ability to continue to perform light-duty employment. Since the Board's decision referred to both *Meden* and *Volk,* the Commonwealth Court summarized those cases and stated as follows:

> Although the outcome in *Meden* and *Volk* was identical, the key distinction between those cases is the fact that, in *Meden,* the claimant had exhausted his 500 weeks of eligibility for partial disability benefits; therefore, to establish an increase in disability, he had no other option but to establish that the decline in his physical condition reduced his earning power to zero, rendering him totally disabled. On the other hand, Volk still had 123 weeks of eligibility for partial disability benefits, and he could have prevailed on his petition by establishing that the deterioration of his physical condition resulted in either total disability **or** that his earning power, although not reduced to zero, was now reduced more than it had been at the time that the [workers' compensation judge] originally awarded him partial disability benefits. If Volk **had** made such a showing, he would have demonstrated that he was then presently partially disabled to a greater degree than he had been at the time he was originally awarded partial disability benefits and could have received partial disability benefits at a higher rate for the remainder of the 123 weeks. Because Volk presented **no** evidence regarding the impact of his physical condition on his earning power, we affirmed the denial of his reinstatement.

*Id.* at 600 (emphasis in original). The Commonwealth Court then analogized the circumstances before it to *Volk:*

The case presently before us is identical to *Volk* in that, at the time [the c]laimant applied for reinstatement of total disability benefits, he still had approximately 403 weeks of partial disability eligibility remaining. Therefore, like Volk, he could prevail by showing that the deterioration of his physical condition has reduced his earning power to zero, *i.e.*, total disability, **or** that his earning power has declined further from the date that he was originally awarded partial disability benefits, *i.e.*, greater partial disability.

*Burton*, 711 A.2d at 600 (emphasis in original). The court proceeded to discuss the evidence, finding that the claimant had established a deterioration of his physical condition resulting in a further disability (or decreased earning capacity), to the point where he was no longer capable of performing the light-duty work available to him. Under these circumstances, it found that the burden shifted to the employer to provide evidence of jobs available within the claimant's new physical restrictions. Since the employer did not offer any such evidence, the Commonwealth Court found that the claimant was entitled to increased benefits. *Id.* at 601.

To this point, *Burton* adhered to this Court's workers' compensation jurisprudence. *See Dillon*, 536 Pa. at 498, 640 A.2d at 390 (citing *Cerny v. Schrader & Seyfried, Inc.*, 463 Pa. 20, 25, 342 A.2d 384, 387 (1975)). However, because the claimant's medical evidence established that he was physically capable of performing sedentary work, the Commonwealth Court found that he was not entitled to compensation for total disability, but rather, to "partial disability benefits at the total disability rate." *Burton*, 711 A.2d at 601. It reached this conclusion although acknowledging that no jobs had been shown to be available within the claimant's restrictions, the claimant's "earning power was reduced to zero," and, accordingly, that the claimant was totally disabled. *Id.* *But see generally Dillon*, 536 Pa. at 501–02, 640 A.2d at 391 (equating disability and loss of earning power). In support of its characterization of the benefits afforded, the Commonwealth Court cited *Diffenderfer*, a case involving a post–500–week claim (thus reincorporating a vestige of the Meden/*Volk* over-

lap into its disposition). The function of the citation to *Diffenderfer* is not clear, since *Diffenderfer* found benefits unavailable and made no reference to a category of partial disability benefits at the total disability rate (partial disability benefits would have been unavailable in *Diffenderfer* in any event due to the expiration of the 500–week period). The significance of the Commonwealth Court's decision to withhold compensation for total disability *per se* from the claimant, however, was to subject his benefits to the 500–week limitation, which otherwise would have been inapplicable. *See Burton,* 711 A.2d at 601.[8]

It therefore appears that *Meden's* attempt to employ the standard articulated in *Dillon* in post–500–week cases has resulted in a hybrid standard that increases the burden upon a claimant seeking total disability benefits within the 500–week period to establish that he is medically disabled in a pure physical sense such that he is incapable of performing even sedentary work, *see Burton,* 711 A.2d at 601, and perhaps understates the burden borne by a claimant seeking compensation for total disability following the expiration of the 500–week period. *See Meden,* 167 Pa.Cmwlth. at 73, 647 A.2d at 623.

We find such a hybrid standard to be erroneous. With regard to cases in which a modification petition is filed within the period of eligibility for compensation for partial disability, we reaffirm the standards enunciated in *Dillon,* 536 Pa. at 498, 640 A.2d at 390. Where an employee satisfies his burden of establishing that his work-related injury once again has resulted in a loss of earning capacity, the burden shifts to the employer to demonstrate job availability. *Id.* If the employer is unable to demonstrate that employment is available within the claimant's physical restrictions, absent special circumstances of a kind not identified in *Burton,* benefits are

8. *Burton* appears to be the first published decision in which the Commonwealth Court attempted to apply such a distinction. The distinction, however, has subsequently been applied in other cases. *See, e.g., Pappans Family Restaurant v. WCAB (Ganoe),* 729 A.2d 661, 668 (Pa. Cmwlth.1999).

payable under Section 306(a) of the Act, 77 P.S. § 511, the schedule of compensation for total disability, and the 500–week period of eligibility for partial disability benefits has no application vis-à-vis the increased benefits.[9]

With regard to claims filed after the expiration of the 500–week period, we acknowledge the difficulties faced by the Commonwealth Court in fashioning an appropriate construct. First, there may be a certain natural confluence between pre- and post–500–week claims, such as occurred in *Meden* and *Volk*, both involving retirement-age claimants suffering from coal workers' pneumoconiosis who sought total disability benefits after having received compensation for partial disability for a substantial period; therefore, there may be a natural tendency to provide for similar treatment. Second, *Dillon* presents an attractive construct for application in the post–500–week setting, at a minimum presenting a logical starting point, since a claimant seeking modification after the expiration of the 500–week period certainly must prove at least as much as a claimant seeking modification within such period.

**9.** Perhaps the Commonwealth Court in *Burton* was attempting to achieve some sort of parity among all claimants suffering from a physical impairment that permits light duty or sedentary work. Under our current system, although two claimants may have an identical physical impairment, based upon work availability one may receive partial disability benefits and the other total. The former is subject to the 500–week limitation on benefits; whereas, the latter is not, since the General Assembly has established no cap on total disability benefits. While this scheme may seem to contain an aspect of arbitrariness, it provides employers with an incentive to accommodate a claimant's restrictions by any of a number of means, including provision of light-duty work and pursuit of outside employment opportunities with diligence. To the extent that the system results in uneven treatment, such is a consequence of the clear legislative design, pursuant to which disability is conditioned not directly upon the nature of a claimant's injury, but rather, on the effect of such injury upon the specific claimant's ability to generate earnings. *See generally* 77 P.S. §§ 511, 512; *Dillon*, 536 Pa. at 501, 640 A.2d at 391 (stating that "we determine the degree of a worker's disability by reference to how the injury affected his earning power" (citation omitted)). Absent an allegation of impairment of constitutional rights, it would be inappropriate to attempt to correct a perceived flaw in such design by judicially altering the structure, for example, by increasing the category of claims subject to the 500–week limitation to require similar results among claimants with similar injuries.

The *Dillon* standard, however, is designed with a degree of inherent flexibility that is inappropriate to the post–500–week setting, since *Dillon* will accommodate instances of increased partial disability that are not cognizable after the expiration of the 500–week period. Third, the post–500–week cases often involve occupational disease, where the disability is long-term and progressive, such that if the claimant is not now totally disabled, he may be in the future; thus, claimants will have an especially strong incentive to vigorously pursue their continuing entitlement, particularly in light of the three-year limitation on the assertion of their claims. *See* 77 P.S. § 772. Additional complications may arise in these cases as well; for example, a claimant may not assume light-duty employment during the period during which he receives partial disability benefits, and in such circumstances, there will be no convenient point of reference from which to measure further loss of earning capacity.

■ Despite these difficulties, our task is to give effect to the General Assembly's directive. eliminating the receipt of compensation based upon partial disability after the expiration of the 500–week period.[10] In this regard, we agree with the Commonwealth Court's interpretation of Section 413(a) to the effect that it forecloses claims for increased compensation for partial disability short of total disability—in capping an employer's liability for partial disability benefits, it seems plain the General Assembly did not intend serial petitions based upon incremental changes in medical condition or fluctuations in the job market. Moreover, just as in cases where benefits have been terminated the claimant cannot relitigate the cessation of compensation under the guise of a petition for reinstatement, *Shipley Oil Co. v. WCAB (Lehr)*, 658 A.2d 489 (Pa.Cmwlth.1995), a post–500–week claim may not be used to

10. Although Section 413(a)'s limitations will impose a hardship on some claimants, particularly those suffering from progressive occupational disease, as noted, the provisions of the Act result from a legislative effort to balance benefits and burdens as between employers and employees, advantaging claimants, for instance, with compensation for work-related injuries without the necessity of establishing liability in tort.

overcome the effect of the statutory limit on eligibility for partial disability benefits. *See generally Diffenderfer,* 651 A.2d at 1180 ("if it were otherwise, partial disability benefits would continue *ad infinitum,* obliterating the finite nature of those benefits imposed under Section 306(b)").

■ In reviewing the jurisprudence concerning post–500–week claims, we find that the *Kunicki* decision represents an appropriate starting point for the development of a standard of proof, and we endorse its finding that a post–500–week claimant must establish his total disability by precise and credible evidence of a more definite and specific nature than that required to obtain compensation initially or modification within the 500–week period. *See Kunicki,* 56 Pa.Cmwlth. at 75, 423 A.2d at 1370. *See generally supra* notes 6–7. A portion of the Commonwealth Court's discussion from *Burton* is also helpful in its direction that the post–500–week claimant must, in the first instance, establish that he has no ability to generate earnings (or a "zero earning capacity"), since partial disability benefits are no longer available to that claimant. *See Burton,* 711 A.2d at 600. Further, we agree with developed Commonwealth Court jurisprudence requiring a demonstration of a worsening of the Claimant's medical condition. *See, e.g., French v. WCAB (Foster Wheeler Energy Corp.),* 745 A.2d 92, 95 (Pa.Cmwlth.2000).[11]

■ Ordinarily, proof of total disability may be accomplished by demonstration of a work-related injury that precludes the claimant from returning to his time-of-injury job. *See, e.g., Dillon,* 536 Pa. at 498, 640 A.2d at 390. Where an increase in existing benefits is sought, the inability to return

**11.** Notably, with regard to pre–500–week claims, *Dillon* would also permit increased benefits to be afforded upon a showing that light-duty work is not available. *See Dillon,* 536 Pa. at 499, 640 A.2d at 391. As noted, however, modification in the post–500–week setting is a hybrid between modification of existing benefits and reinstatement of terminated benefits. *See supra* note 5; *see also Stewart,* 562 Pa. at 410–11 n. 8, 756 A.2d at 600 n. 8. In this regard, we find it appropriate to apply the termination/reinstatement model, *see, e.g., Palmer v. WCAB (Helen Mining Co.),* 710 A.2d 1245, 1248 (Pa.Cmwlth.1998)(requiring a showing of change in medical condition to support post-termination reinstatement), based upon the legislative design.

to a light-duty job may be offered to establish the disability, and the burden shifts to the employer to demonstrate that the claimant has the ability to generate earnings consistent with his physical limitations. *See Id.* In the post–500–week context, where the claimant is working until the time period for which total disability benefits are sought, we discern no reason to require more than that the claimant establish, by clear and precise evidence, that his increased, work-related impairment has precluded continuation of such light-duty employment. The burden to prove the availability of employment consistent with the claimant's physical limitations will then shift to the employer.[12] Where, however, as here, the claimant has not engaged in the light-duty work which was found to be available and consistent with his physical limitations in connection with the award of compensation for partial disability, his burden will be greater. First, depending upon the circumstances, the claim may be vulnerable to denial on the basis of voluntarily retirement. *See generally Republic Steel Corp. v. WCAB (Petrisek),* 537 Pa. 32, 38, 640 A.2d 1266, 1270 (1994)(finding that a claimant who had voluntarily retired was not entitled to benefits under the Act); *Island Creek,* 651 A.2d at 1178 n. 4 (noting that the claimant would have been precluded from recovering benefits as he was retired); *Meden,* 167 Pa.Cmwlth. at 75 n. 6, 647 A.2d at 624 n. 6 (suggesting the same). Second, the claimant will not be afforded the benefit of the presumption of total disability from an inability to perform an existing light-duty job. Rather, the claimant is in the position of having to prove a negative (i.e., that there are *no* jobs available in which he could work consistent with his physical limitations). In this setting, medical testimony which concedes that a claimant retains the physical ability to accomplish light-duty work, with no vocational or other form of assessment as to why such work is not available, will be deemed fatal to the claim.

12. As noted in *Vista Int'l Hotel v. WCAB (Daniels),* 560 Pa. 12, 742 A.2d 649 (1999), recent amendments to the Act may affect employers' burden in this regard for injuries suffered after the effective date. *Id.* at 29 n. 11, 742 A.2d at 658 n. 11.

■ Although we realize that this is an exacting burden and this Court has previously avoided requiring the proof of a negative in order to maintain benefits, in this context we find the allocation necessary to accommodate the General Assembly's purpose in imposing the 500–week limitation. While this standard may undergo refinements in future cases, where, as here, the claimant has ceased work during the period of eligibility for partial disability benefits, is presently physically capable of work of some kind, and fails to offer credible evidence indicating why such work is not available to him, benefits cannot be afforded consistent with the Legislature's decision to foreclose compensation for partial disability following a 500–week period of eligibility.

Accordingly, the order of the Commonwealth Court is affirmed.