756 A.2d 655

Robert S. STEWART, Appellant,

v.

WORKERS' COMPENSATION APPEAL BOARD (PA. GLASS
SAND/US SILICA and INA/CIGNA WCC), Appellee.

Supreme Court of Pennsylvania.

Submitted March 14, 2000.

Decided July 14, 2000.

Mark A. Givler, Givler & Evers, Lock Haven, for Robert Stewart.

Thomas M. Fraticelli, James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for PA Glass Sand, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

The issue presented is whether expiration of the 500–week period during which a claimant retains eligibility to receive workers' compensation for partial disability forecloses a subsequent claim for total disability upon deterioration of the claimant's physical condition.

After thirty years of employment with Appellee Pennsylvania Glass Sand ("Employer") as a crane operator in a sand environment, Appellant Robert Stewart ("Claimant") ceased work and filed a claim petition seeking benefits under the Workers' Compensation Act,[1] alleging that he suffered from a disabling, work-related pulmonary condition. Claimant, Employer,[2] and Employer's insurer, INA/CIGNA WCC, elected to enter into a supplemental agreement for compensation on May 15, 1985, providing for the commencement of partial disability benefits effective September 30, 1984, and Claimant received benefits in the amount of $200 per week pursuant to such agreement throughout the statutory 500–week period of eligibility, *see* 77 P.S. § 512(1), final payment being tendered in April, 1994. On September 29, 1994, Claimant filed a petition for modification, seeking total disability benefits, effective April 30, 1994. The petition alleged, *inter alia,* that, as a result of a worsening of his respiratory disease, Claimant had entirely lost his ability to work.

At hearing before a workers' compensation judge (the "WCJ"), Claimant testified in support of his claim and pre-

---

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4) (the "Act").

2. U.S. Silica succeeded Pennsylvania Glass Sand in relation to its obligations to Claimant under the Act.

sented testimony from his treating pulmonologist, Jose Acosta, M.D., to the effect that Claimant suffered from silicosis, and that the effects of such occupational disease had progressively worsened throughout the period of Claimant's partial disability. The WCJ subsequently issued a decision denying modification, finding, among other things, that Claimant was not totally disabled, but rather, had voluntarily retired and removed himself from the workforce. Although Employer had asserted that, by virtue of his receipt of partial disability benefits for 500 weeks, Claimant was barred under the Act from receiving total disability benefits, the WCJ did not address this argument. Claimant filed an appeal in the Workers' Compensation Appeal Board (the "Board"), which found that the WCJ had improperly disregarded Claimant's uncontroverted evidence establishing that his total disability was a direct result of his acknowledged work-related lung disease, and erroneously deemed Claimant to have voluntarily retired. The Board, however, agreed with Employer's argument that Claimant's rights and remedies under the Act had been exhausted, since Claimant had received the full measure of available partial disability benefits. A three-judge panel of the Commonwealth Court affirmed, both as to the conclusion that the WCJ disregarded competent evidence concerning the extent of Claimant's physical disability and cessation of work, and as to the holding that Employer was relieved from any liability. *Stewart v. WCAB (PA Glass Sand/U.S. Silica)*, 724 A.2d 403 (Pa.Cmwlth.1999). We granted Claimant's petition for allowance of appeal to address the latter determination.[3]

The relevant statutory provisions are Sections 306(b) and 413(a) of the Act. Section 306(b) establishes a general rule setting compensation for partial disability at sixty-six and two-thirds percent of the difference between pre-injury wages and post-injury earning power. 77 P.S. § 512(1). Compensation is available throughout the period during which the employee's earnings capacity is affected, *"but for not more than five*

3. Employer also sought appeal to challenge the Board's reversal of other of the WCJ's findings and conclusions, particularly concerning the extent of Claimant's disability and whether Claimant had voluntarily retired; however, appeal was not allowed on these questions.

*hundred weeks,"* 77 P.S. § 512(1)(emphasis added); thus, the period during which partial disability benefits are available is capped at approximately nine and one-half years. Section 413(a) provides for, among other things, modification of benefits "at any time" upon proof that a claimant's disability has increased, 77 P.S. § 772, for example from a partial to a total loss. Increased benefits generally are available as of the date on which the change is demonstrated to have occurred; however, central to the question presented in this appeal, Section 413(a) limits the availability of review, modification or reinstatement, *inter alia,* as follows:

except in the case of eye injuries, no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition. . . . And provided further, That *where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury[,]* . . . *payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable,* unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772 (emphasis added).

Employer argues, and the Commonwealth Court found, that total disability benefits are not available to Claimant, because Section 413(a) deprives a claimant of eligibility to seek modification or reinstatement under any circumstances following expiration of the maximum period allowed for the receipt of compensation for partial disability under Section 306(b). Both base this interpretation upon the final sentence of Section 413(a) to the effect that, where compensation has been suspended because the claimant has returned to work with earnings equal to or in excess of his pre-injury wages, benefits may be resumed at any time during the 500 weeks. Employer all but acknowledges that the relied-upon provision, on its terms, applies only to cases in which a claimant's benefits are sus-

pended because he has regained the ability to generate his time-of-injury wages, which simply is not the case here. Employer contends, nonetheless, that the provision should be made applicable to cases in which no suspension has occurred but partial disability benefits have been afforded for 500 weeks, since there is no rational basis on which to differentiate between claimants who are partially disabled but whose earnings result in a suspension and partially-disabled claimants who obtain limited benefits, in terms of who should have access to relief upon experiencing total disability subsequent to the expiration of 500 weeks. Employer cites to dictum from this Court's decision in *Dillon v. WCAB (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), as also supportive of the asserted limitation. Claimant emphasizes that the final sentence of Section 413(a), by its express terms, is limited to cases involving *suspensions* of benefits; argues that the provision merely serves to exempt such cases from the effect of the three-year limitation on the filing of a modification petition after *termination* of benefits; and contends that his construction of Section 413(a) is supported by the decisional law of the Commonwealth Court and by public policy.

Claimant is correct in his assertion that the opinion under review represents a departure from Commonwealth Court precedent. In interpreting the final sentence of Section 413(a), the Commonwealth Court has long drawn a distinction between claimants who have received the full statutory allotment of partial disability benefits, and those whose benefits were suspended during the applicable 500–week period based upon their ability to generate a pre-injury wage. As to the former category (those who have received partial disability benefits for 500 weeks), the Commonwealth Court's published opinions consistently indicate that total disability benefits are in fact available upon demonstration of deterioration in the claimant's condition, and subject to Section 413(a)'s three-year limitation commencing upon receipt of the final payment of partial disability compensation. *See French v. WCAB (Foster Wheeler Energy Corp.)*, 745 A.2d 92, 94 (Pa.Cmwlth.2000)(assessing the burden borne by a claimant seeking compensation

for total disability following the expiration of the 500–week period of eligibility for partial disability benefits); *Stanek v. WCAB (Greenwich Collieries)*, 701 A.2d 627, 629 (Pa.Cmwlth.1997)(discussing same), *appeal granted*, 557 Pa. 657, 734 A.2d 863 (1999); *Diffenderfer v. WCAB (Rabestos Manhattan, Inc.)*, 651 A.2d 1178, 1180 (Pa.Cmwlth. 1994)(same), *appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995); *Island Creek Coal v. WCAB (Shenego)*, 651 A.2d 1174, 1176 (Pa.Cmwlth.1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995); *Meden v. WCAB (Bethenergy Mines, Inc.)*, 167 Pa. Cmwlth. 68, 71, 647 A.2d 620, 622 (1994), *appeal denied*, 540 Pa. 624, 657 A.2d 494 (1995); *Falls–Overfield Vocational School Dist. v. Davis*, 8 Pa.Cmwlth. 63, 67–68, 301 A.2d 118, 120–21 (1973). With respect to the latter category (suspension because the claimant has regained the ability to generate his pre-injury earnings), the Commonwealth Court has consistently found that expiration of the 500–week period operates as a bar to the assertion of a subsequent claim for total disability benefits. *See, e.g., Edgewater Steel Co. v. WCAB (Beers)*, 719 A.2d 812, 814 (Pa.Cmwlth.1998); *Deppenbrook v. WCAB (Republic Steel Corp.)*, 655 A.2d 1072, 1075–76 (Pa.Cmwlth.1995); *Roussos v. WCAB (St. Vincent Health Center)*, 157 Pa. Cmwlth. 584, 587–88, 630 A.2d 555, 557 (1993).

Employer does not acknowledge the former line of cases pertaining to paid partial disability, but rather, seeks to extend the effect of the decisions involving suspensions to obviate them. Employer's interpretation, however, cannot abide a plain reading of the final sentence of Section 413(a), which opens with the phrase: "[W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury ....". Thus, the words that follow ("payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable") cannot operate to foreclose the receipt of total disability benefits by claimants, such as Claimant herein, who have never regained the ability to generate wages at the pre-injury level and as to whom, accordingly, compensation has never been suspended for such reason.

Like Employer, we are unable to discern a sound policy reason for distinguishing between employees who are partially disabled but whose post-injury earnings ability requires a suspension of benefits, and those who are also partially disabled but whose earnings result in the affordance of partial disability benefits, in terms of who should be deemed entitled to seek total disability compensation after the expiration of 500 weeks. Additionally, such distinction would appear difficult to maintain in cases in which the claimant has received partial disability benefits as well as experienced suspension of benefits in various time increments throughout the pertinent 500–week period.[4] Nevertheless, we are not free to disregard the express limitation in scope attached to the final sentence of Section 413(a) under the pretext of pursuing the spirit of the enactment. 1 Pa.C.S. § 1921(b). As important, we are not convinced that the legislative purpose underlying Section 413(a) would support Employer's interpretation. Indeed, the unexplained disparity in treatment between claimants based upon the extent to which their disabilities have abated during the 500–week period would seem to present a more appropriate basis for questioning those decisions which interpret the expiration of the 500–week period as a bar to the assertion of total disability claims by employees who have experienced a suspension of benefits (for example, *Edgewater, Deppenbrook* and *Roussos* ), since such construction is less solidly grounded in the plain meaning of Section 413(a).[5]

**4.** The Commonwealth Court has held that, in a case involving suspension of benefits, the 500–week period begins as of the effective date of the suspension. *See, e.g., Roussos,* 157 Pa.Cmwlth. at 588, 630 A.2d at 557. This could be read to suggest that, in a case where partial disability benefits have been received and are subsequently subject to suspension, a fresh 500-week period begins upon suspension. We reject such an interpretation, however. Section 413(a) refers, in the singular, to "the period for which compensation for partial disability benefits is available," which is the period commencing upon the earlier of the commencement of compensation for partial disability *or* suspension. *See generally Goodrich v. WCAB (Shenango China),* 165 Pa. Cmwlth. 217, 220, 645 A.2d 302, 304 (1994).

**5.** The final sentence of Section 413(a) expressly indicates what is permissible during the 500–week period related to claims in suspen-

The availability of a post–500–week claim for total disability in the present case not only results from a straightforward, plain-meaning interpretation of the relevant statutory provision, but also is consistent with the remedial purpose and

sion, namely, resumption of benefits. Thus, its primary, direct application is to permit a claimant whose benefits are in suspension to avoid the effect of Section 413(a)'s three-year limitations period applicable to claimants whose benefits have been *terminated*. *See Bellows v. WCAB (Shabloski)*, 663 A.2d 267, 269–70 (Pa.Cmwlth.1995); *USX Corp. v. WCAB (Guthrie)*, 132 Pa.Cmwlth. 54, 57–58, 571 A.2d 1112, 1114 (1990). Underlying this substantive effect is a clear and sound policy justification—since a suspension for economic reason benefits an employer, the employer would be ill-heard to complain if a claimant's subsequent loss of earnings power triggers restoration of benefits within the statutory period of eligibility. *See Goodrich*, 165 Pa.Cmwlth. at 220, 645 A.2d at 304 (quoting *D & T Brooks, Inc. v. WCAB (Knight)*, 38 Pa.Cmwlth. 223, 228, 392 A.2d 895, 898 (1978)). Certainly by implication, the statute also requires that periods of suspension be included within the 500–week calculation for purposes of determining when partial disability benefits have expired. *See generally id.; Dillon*, 536 Pa. at 504 n. 3, 640 A.2d at 392–93 n. 3. A further inference is required, however, to support the conclusion that all post–500–week claims (including those for total disability) on the part of a claimant whose benefits have been suspended are precluded. Moreover, as noted, this would not appear to be as reasoned an inference, as we perceive no apparent sound policy justification for distinguishing between partially-disabled claimants who have received a full complement of partial disability benefits and those who have experienced some period of suspension, in terms of the effect of the expiration of 500 weeks upon potential future claims. We decline to resolve this question in the present appeal, however, since the appropriate facts are not before us; we merely note that the opinion in this case should not be read as an endorsement of the pertinent reasoning from *Edgewater, Deppenbrook* and *Roussos*.

Parenthetically, there are also sound policy arguments against distinguishing between a claimant who has accepted a lump-sum payment of partial disability benefits from one who receives such benefits in installments, in terms of the running of the 500–week period. Nevertheless, the Commonwealth Court has enforced a plain-meaning approach to Section 413(a)'s directive that the three-year limitations period commences after "the date of the most recent payment of compensation," 77 P.S. § 772. *See, e.g., Bailey v. WCAB (ABEX Corp.)*, 717 A.2d 17, 22–23 (Pa.Cmwlth.1998); *Waratuke v. WCAB (Handee Marts)*, 687 A.2d 1219, 1221 (1997); *Mason v. WCAB (Acme Markets)*, 156 Pa.Cmwlth. 10, 13, 625 A.2d 1271, 1272 (1992). Therefore, an employee suffering from a progressive disease must consider offers of commutation in light of the current jurisprudence giving commutation agreements, at least in absence of an effective contractual waiver, the effect of depriving the employee the advantage of the final sentence of Section 413(a) in relation to future claims.

humanitarian objective of the Act. Significantly, an employee with a fixed and stable, but partially-disabling, condition may receive the protection of a substantial period of subsidy (approximately nine and one-half years), within which to adjust to his disability and maximize his earning capacity consistent with his physical limitations. At a minimum, assuming no worsening of the employee's condition, the employee retains his physical capacity to generate the amount of earnings previously subject to supplementation. The same cannot be said, however, where an employee's condition deteriorates to the point of total disability, or work within the claimant's restrictions ceases to be available, such that the employee no longer retains the ability to support himself and his dependents in any fashion. Since these circumstances diverge substantially in terms of the impact of cessation of benefits upon the injured employee, it is not surprising that the legislative scheme of compensation allows for differential treatment.[6]

Nor is this Court's decision in *Dillon* to the contrary, in which, in dicta, the Court stated:

[A]n employee who returns to work at wages equal to or greater than his pre-injury wages, and thus has his compensation suspended, is in the same position after 500 weeks, see 77 P.S. § 512, as an employee who returned to work at reduced wages and thus received compensation for partial disability, i.e., the employer's liability is terminated.

*Dillon*, 536 Pa. at 504 n. 3, 640 A.2d at 392–93 n. 3. This language merely refers to the primary, direct effect of Section 413(a), which includes the requirement that any period of

**6.** We recognize that, under our interpretation, an Employer's obligations to an employee suffering from a total disability may remain substantial despite a significant passage of time. The legislative scheme, however, seeks to strike a balance, advantaging Employer with immunity from liability in tort, as well as limitations on liability tied to a percentage of employee earning capacity. *See generally Triangle Building Center v. WCAB (Linch)*, 560 Pa. 540, 547–49, 746 A.2d 1108, 1112 (2000). As previously noted, the General Assembly has also implemented a three-year limitation for the filing of a modification petition, commencing upon the date of the most recent payment of compensation, which also may inure to the benefit of employers in some cases involving delayed claims. 77 P.S. § 772.

suspension of benefits be included within the 500 weeks of eligibility for resumption of partial disability benefits. *See supra* note 5.[7]

In the present case, the Commonwealth Court concluded that Claimant had established his total disability resulting from his occupational disease, and such determination is not subject to challenge in this appeal. Since Claimant filed his modification petition within three years after the final payment under the parties' supplemental agreement for compensation, the modification petition was timely, and the 500-week period under Section 306(b) does not operate as an impediment to relief.[8]

7. Employer argues that the Court's suggestion was that an employer's liability for all forms of disability ceases absolutely after 500 weeks if no petition seeking compensation for total disability has been filed. While *Dillon* did not specifically state to the contrary, the context of the quoted statement renders its meaning plain, as the Court was elaborating upon a comparison of suspension of benefits to partial disability compensation in connection with its clarification of the standard of proof required to obtain an increase in benefits sought *within* the 500-week period. It is also clear from the related text that the Court was not suggesting that all forms of compensation were entirely foreclosed, since the Court was addressing a claimant's respective burdens in *overcoming* a suspension versus a termination. *See generally Shipley Oil Co. v. WCAB (Lehr)*, 658 A.2d 489, 491 (Pa.Cmwlth.1995)(indicating that "[u]pon the termination of claimant's compensation benefits, the employer's liability for those benefits ceases entirely," although also setting forth a claimant's burden to obtain reinstatement following termination). Notably, in a separate passage, the Court in *Dillon* expressly observed that the Act places no fixed duration upon compensation for total disability. *See Dillon*, 536 Pa. at 495–96, 640 A.2d at 389.

Also worthy of note is the fact that, pursuant to existing Commonwealth Court jurisprudence, entitlement to total disability benefits after the expiration of 500 weeks requires proof of a worsening of condition, *see, e.g., Island Creek*, 651 A.2d at 1176, which, pursuant to *Dillon*, is not necessarily required of an employee who seeks increased benefits within the 500-week period of eligibility for partial benefits. *See Dillon*, 536 Pa. at 503–04, 640 A.2d at 393. The validity of such requirement is not before us in this case; however, the Commonwealth Court would appear to have interposed the requirement corollary to the General Assembly's express intention to cap available compensation related to partial disability.

8. We note that characterization of Claimant's petition as one for "modification" may seem peculiar, since the form of benefits previously

Accordingly, the order of the Commonwealth Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

afforded to Claimant have been entirely exhausted. The Commonwealth Court has recognized the difficulty in characterizing a post–500–week petition seeking compensation for total disability in *Island Creek*, 651 A.2d at 1175, stating as follows:

> Since his benefits have been exhausted, [the c]laimant is technically seeking neither a modification nor a reinstatement of benefits. A reinstatement petition is filed when a claimant's benefits have been suspended or terminated. A modification petition suggests that a claimant is currently receiving benefits which the petitioner seeks to change. [The c]laimant in this case is now in a "hybrid" situation where he is receiving no current benefits, since his eligibility for partial disability benefits has been exhausted, but his "benefits" have been neither suspended nor terminated. However, Section 413 of the Act, 77 P.S. § 772, does not make a distinction in the petitions to be filed for reinstatement and modification. Accordingly, the form of the petition is not controlling and such petition will be deemed to have been filed pursuant to whichever section of the Act is appropriate.

*Id.* at 1175 n. 3. The Commonwealth Court's observations in this regard are apt.