**Leo PROSICK, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HERSHEY CHOCOLATE USA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 2007.

Decided Nov. 15, 2007.

Lester Krasno, Pottsville, for petitioner.

Robert J. Goduto, Harrisburg, for respondent.

BEFORE: McGINLEY and FRIEDMAN, JJ., and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Leo Prosick (Claimant) worked as a molding operator for Hershey Chocolate USA (Employer). On December 11, 1992, Claimant slipped and fell at work and fractured his right hip. Claimant underwent open reduction and internal fixation surgery. Pursuant to a supplemental agreement, Claimant received temporary total disability benefits from December 12, 1992, through March 7, 1993, and partial disability benefits from March 8, 1993, through June 27, 1993. Claimant then worked with no loss of earnings until February 11, 1994, when he underwent surgery to remove the pins from his hip. Under a second supplemental agreement, Claimant received temporary total disability benefits as of February 11, 1994. A third supplemental agreement, dated April 6, 1994, recorded that Claimant returned to work fulltime, and provided for a suspension of his benefits as of March 28, 1994.

On February 24, 2005, Claimant's treating physician, Mark Nicholas Perlmutter, M.D. (Dr. Perlmutter) directed that Claimant be limited to restricted duty due to his hip condition. Claimant retained his title as a molding operator but was restricted to watching a computer screen. He could not climb, lift, or push. On March 29, 2005, Employer informed Claimant that there was no light duty position available for him.

On April 25, 2005, Claimant petitioned to reinstate temporary total disability benefits and alleged that Employer did not make light duty work available. Also, on April 25, 2005, Claimant petitioned for penalties and alleged that "Claimant was reduced to light-duty work by Dr. Perlmutter effective March 29, 2005, and Defendant [Employer] has refused to make a light-duty job available and has failed to

pay compensation notwithstanding documentation." Penalty Petition, April 25, 2005, at 2; Reproduced Record (R.R.) at 2.[1]

Claimant testified that before the medically imposed restrictions on February 24, 2005, he was able to perform his job as a molding operator. After he was placed on restricted duty, he did not climb, push, or lift. Notes of Testimony, May 26, 2005, (N.T.) at 10–11; R.R. at 18–19. Claimant's hip condition worsened from 1994 until February 24, 2005. N.T. at 11; R.R. at 19. He underwent hip replacement surgery on November 1, 2005. Notes of Testimony, November 29, 2005, at 9; R.R. at 49.

Claimant presented the deposition testimony of Dr. Perlmutter, board-eligible in orthopedic surgery. Dr. Perlmutter first treated Claimant with respect to his hip on February 24, 2005. Dr. Perlmutter diagnosed Claimant with an impressive amount of bone loss in his right hip with the "complete loss of the entire 50 percent of the top of the ball ... and socket joint." Deposition of Mark Nicholas Perlmutter, M.D., September 24, 2005, (Dr. Perlmutter Deposition) at 13; R.R. at 75. Dr. Perlmutter opined within a reasonable degree of medical certainty that the degeneration of the hip was "post-traumatic from the avascular necrosis that's predictable after a fractured femoral head." Dr. Perlmutter Deposition at 15; R.R. at 77. Dr. Perlmutter restricted Claimant from climbing, squatting, kneeling, bending, crawling, jumping, or ascending unprotected heights as of February 24, 2005. Dr. Perlmutter Deposition at 20; R.R. at 82. Dr. Perlmutter recommended that Claimant undergo a hip replacement because of the hip fracture at work. Dr. Perlmutter Deposition at 23; R.R. at 85. Dr. Perl-

---

1. The penalty petition is not before this Court.

mutter attributed "100 percent of the patient's [Claimant] reported symptoms and the results of his disability to his reported work-related injury; that being his fall, requiring a hip pinning in 1992." Dr. Perlmutter Deposition at 32; R.R. at 94. Dr. Perlmutter's final diagnosis of Claimant was "post-traumatic osteoarthritis resulting from the hip fracture in 1992. He had progressive post-traumatic avascular necrosis and advanced collapse of both the hip and the acetabulum." Dr. Perlmutter Deposition at 37; R.R. at 99.

Employer presented the deposition testimony of Thomas DiBenedetto, M.D. (Dr. DiBenedetto), a board-certified orthopedic surgeon. Dr. DiBenedetto examined Claimant on June 10, 2005, took a history, and reviewed medical records. Dr. DiBenedetto diagnosed Claimant with avascular necrosis of the right femoral head and subsequent degenerative arthritis. Deposition of Thomas DiBenedetto, M.D., October 3, 2005, (Dr. DiBenedetto Deposition) at 18; R.R. at 159. Dr. DiBenedetto testified within a reasonable degree of medical certainty that Claimant's condition was unrelated to Claimant's December 11, 1992, work injury because "[a]lthough with proximal femur fractures or femoral neck fractures, avascular necrosis is a known complication or sequela. It's only noted to occur up to 5 years after that type of injury and internal fixation." Dr. DiBenedetto Deposition at 18; R.R. at 159.

The Workers' Compensation Judge (WCJ) denied the reinstatement and penalty petitions and ordered Employer to continue to pay all reasonable and necessary medical expenses with respect to treatment of Claimant's right hip. The WCJ found Dr. Perlmutter credible and found Dr. DiBenedetto credible to the extent his opinions were consistent with Dr. Perlmutter's. The WCJ made the following relevant finding of fact:

20. This Workers' Compensation Judge has carefully reviewed all of the testimony and evidence presented in this matter. Based upon such review, this Judge hereby accepts the claimant's testimony as competent, credible, and worthy of belief with the exception of his testimony that following his second surgery upon his right hip on February 11, 1994, he missed work completely for the employer for about six months. His testimony in that regard is hereby rejected as lacking credibility, based upon the Supplemental Agreement, dated April 6, 1994. However, in all other respects, this Judge does hereby accept the claimant's testimony as competent, credible, and worthy of belief, based upon his demeanor and the consistency of his testimony with the medical testimony and evidence presented in this matter.

Accordingly, then, based upon the foregoing findings, this Judge hereby finds as a fact that on December 11, 1992, the claimant sustained a work-related injury in the nature of a fracture of his right hip in the course of his employment with the employer. This Judge hereby further finds as a fact that on March 28, 1994, following his second surgery upon his right hip which was performed on February 11, 1994, the claimant returned to work in his regular job or position as a molding operator for the employer, and that he continued to work for the employer without missing any time from work as a result of the condition of his right hip until March 29, 2005. This Judge hereby further finds and concludes that since the claimant's workers' compensation wage loss benefits arising out of his said work-related injury were suspended as of March 28, 1994, and since he did not receive payment of any workers' compensation wage loss benefits thereafter, he is barred from

receiving any further workers' compensation wage loss benefits in this matter by the provisions of section 413 of the Workers' Compensation Act.... (Citations omitted).

WCJ's Decision, May 12, 2006, Findings of Fact No. 20 at 5–6; R.R. at 247.

Claimant appealed to the Workers' Compensation Appeal Board which affirmed the denial of the reinstatement petition on the basis that Claimant did not apply for reinstatement of benefits within 500 weeks after benefits were suspended and he did not receive compensation benefits within three years of the date he filed for reinstatement.

■ Claimant contends that the Board erred when it affirmed the dismissal of his reinstatement petition as untimely.[2]

Section 306(b) of the Workers' Compensation Act (Act)[3] provides in pertinent part:

For disability partial in character caused by the compensable injury or disease ... sixty-six and two-thirds per centum of the difference between the wages of the injured employe ... and the earning power of the employe thereafter; but such compensation shall not be more than the maximum compensation payable. This compensation shall be paid during the period of such partial disability except as provided in clause (e) of this section, but for *not more than five hundred weeks*. Should total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability. (Emphasis added).

Also, Section 413 of the Act, 77 P.S. § 772, provides that a WCJ may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award by a WCJ, "Provided, That, ..., no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition."

■ Periods of suspension and payment of partial disability benefits are added together for a determination the expiration of the 500 week period for purposes of the statute of limitations. However, periods of suspension do not count toward the 500 weeks during which partial disability benefits are payable. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Servey)*, 811 A.2d 114 (Pa.Cmwlth.2002).

In *Cicchiello v. Workers' Compensation Appeal Board (Frank L. Markel Corporation)* 761 A.2d 210 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 566 Pa. 649, 781 A.2d 148 (2001), this Court addressed the situation where a claimant sought reinstatement after the expiration of five hundred weeks from the time total disability benefits were suspended. On August 18, 1983, Pietrange Cicchiello (Cicchiello) suffered a work-related strain to his left arm and received total disability benefits pursuant to a notice of compensation payable. Cicchiello returned to work on December 8, 1983, and signed a final receipt. Cicchiello later petitioned to set

2. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(1).

aside the final receipt in March 1984, and petitioned to reinstate benefits in March 1985. In 1988, a WCJ[4] granted both petitions and reinstated Cicchiello's total disability benefits as of September 20, 1984, the date when he stopped working. Employer received a credit for July 27 to August 7, 1986, when Cicchiello briefly returned to work. *Cicchiello,* 761 A.2d at 211.

L. Frank Markel Corporation (Markel), Cicchiello's employer, appealed the WCJ's decision to the Board and also petitioned to modify Cicchiello's benefits on the basis that Cicchiello could return to suitable work that was made available to him as of May 23, 1991. In June 1992, the Board affirmed the reinstatement but remanded the case to the WCJ for consideration of evidence presented by Markel regarding the availability of suitable work, which the WCJ had failed to consider. The WCJ determined that Cicchiello was only entitled to partial disability benefits because suitable work was available as of March 29, 1985, which Cicchiello refused. The WCJ also found that between May 23, 1991, and July 16, 1991, Cicchiello failed to pursue six positions where he would have earned a weekly wage equal to or in excess of his pre-injury average weekly wage. The WCJ modified Cicchiello's benefits to the partial disability rate of $93.97 per week as of March 29, 1985, suspended his benefits for the nine days he worked in July and August 1986, reinstated his partial disability benefits thereafter, and suspended benefits as of May 23, 1991. The Board and this Court affirmed. *Cicchiello,* 761 A.2d at 211.

Cicchiello petitioned to reinstate benefits on March 19, 1997, and alleged that as of December 30, 1994, his condition had worsened and he could no longer perform the work he allegedly could perform in 1994.

Markel denied the allegations and raised the statute of limitations defense. The WCJ dismissed Cicchiello's reinstatement petition on the basis that it was time barred by Sections 306(b) and 413 of the Act, 77 P.S. § 512(1) and § 772. Cicchiello appealed to the Board which affirmed. He then petitioned for review with this Court. *Cicchiello,* 761 A.2d at 211–212.

This Court affirmed:

[T]he period of limitations is not tolled during the time benefits are suspended.... Section 413 clearly states that payments may be resumed any time during the period for which compensation for partial disability is payable.... Benefits for partial disability in the instant matter were payable after Claimant's [Cicchiello] total disability benefits were suspended as of March 29, 1985. Therefore, Claimant [Cicchiello] had five hundred weeks, or 9.6 years, from **the date of the suspension of his total disability benefits** to file a petition for reinstatement (which would have been mid-May of 1994). Claimant [Cicchiello] filed this petition on March 19, 1997, more than twelve years after his total disability payments were suspended in favor of partial disability benefits, and approximately two years and ten months after the five-hundred weeks were exhausted.

. . . .

Claimant [Cicchiello] also relies on the three-year statute of limitations in Section 413, which would permit Claimant [Cicchiello] to file a petition to reinstate within three years of his most recent payment. Claimant's [Cicchiello] reliance is misplaced. In *Roussos [v. Workmen's Compensation Appeal Board (St. Vincent Health Center)*, 157 Pa.Cmwlth.

---

4. At the time, WCJs were known as referees.

584, 630 A.2d 555 (1993)], we expressly distinguished the three-year statute of limitations in Section 413 from the five-hundred week statute of repose contained in Section 306(b). We have unambiguously held that Section 413's three-year limitation 'is totally inapplicable where there has been a suspension....' *Roussos*, 630 A.2d at 556 (citations omitted). Significantly, then, the three-year extension for filing of modification/reinstatement petitions under Section 413 is inapplicable to reinstatements following suspensions, as here, and is applicable only to reinstatements following a termination of benefits. (Emphasis in original. Citations omitted).

*Cicchiello*, 761 A.2d at 213–214.

Here, Claimant returned to work under a suspension of benefits on March 28, 1994, as recorded in the Supplemental Agreement dated on or about April 6, 1994. Claimant then had five hundred weeks to petition for a reinstatement of benefits. The five hundred week period expired prior to the time Claimant sought reinstatement. Claimant did not petition for reinstatement until April 25, 2005.

Claimant, however, argues that the Board erred when it affirmed the WCJ in light of our Pennsylvania Supreme Court's holding in *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 562 Pa. 411, 756 A.2d 661 (2000). In *Stanek*, Francis B. Stanek (Stanek) was awarded partial disability benefits as a result of coal workers' pneumoconiosis following forty-three years of employment with Greenwich Collieries (Greenwich). Commencing on November 10, 1981, Stanek received partial disability benefits for five hundred weeks. On January 29, 1993, Stanek petitioned to reinstate his benefits because his pulmonary condition had worsened to such an extent that he was totally disabled. The WCJ granted the petition. The Board reversed. This Court affirmed. Our Pennsylvania Supreme Court granted the petition for allowance of appeal to determine the appropriate standard in circumstances involving a post–500 week claim for total disability benefits. *Stanek*, 562 Pa. at 414–415, 756 A.2d at 662–663. Our Pennsylvania Supreme Court held that a post–500 week claimant must establish his total disability by precise and credible evidence of a more definite and specific nature than that required to obtain compensation initially or a modification within the 500 week period. *Stanek*, 562 Pa. at 425, 756 A.2d at 668. Our Pennsylvania Supreme Court further refined this burden:

In the post–500–week context, where the claimant is working until the time period for which total disability benefits are sought, we discern no reason to require more than that the claimant establish, by clear and precise evidence, that his increased, work-related impairment has precluded continuation of such light-duty employment. The burden to prove the availability of employment consistent with the claimant's physical limitation will then shift to the employer.... Where, however, as here, the claimant has not engaged in the light-duty work which was found to be available and consistent with his physical limitations in connection with the award of compensation for partial disability, his burden will be greater. First, depending upon the circumstances, the claim may be vulnerable to denial on the basis of voluntary retirement.... Second, the claimant will not be afforded the benefit of the presumption of total disability from an inability to perform an existing light-duty job. Rather, the claimant is in the position of having to prove a negative (i.e., that there are *no* jobs available in which he could work consistent with his physi-

cal limitations). In this setting, medical testimony which concedes that a claimant retains the physical ability to accomplish light-duty work, with no vocational or other form of assessment as to why such work is not available, will be deemed fatal to the claim. (Footnote and citations omitted).

*Stanek,* 562 Pa. at 426, 756 A.2d at 669.

This Court does not agree with Claimant that *Stanek* controls here. In *Stanek,* Stanek had received partial disability benefits for five hundred weeks, which expired before he petitioned for reinstatement. Stanek still petitioned within three years of receiving benefits. Our Pennsylvania Supreme Court in *Stanek* specifically recognized the three year window authorized by the legislature in Section 413. Here, in contrast, Claimant's benefits were suspended after March 28, 1994. He petitioned for reinstatement after the expiration of the 500 weeks, as did Stanek, but he did not petition for reinstatement within three years after the last receipt of benefits. Further, our Pennsylvania Supreme Court noted in *Stanek* that the Section 413 limitations will impose a hardship on some claimants but the "provisions of the Act result from a legislative effort to balance benefits and burdens as between employers and employees, advantaging claimants, for instance, with compensation for work-related injuries without the necessity of establishing liability in tort." *Stanek,* 562 Pa. at 424 n. 10, 756 A.2d at 668 n. 10.[5] While the provisions of the Act impose a hardship upon Claimant, this Court like our Pennsylvania Supreme

Court in *Stanek* must give effect to the General Assembly's intent.

Accordingly, this Court affirms.

### *O R D E R*

AND NOW, this 15th day of November, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

Judge FRIEDMAN concurs in the result only.

---

5. Claimant argues that he should be afforded the opportunity to establish that his condition has worsened and that he has no earning power. Claimant relies on *Kiser v. Workers' Compensation Appeal Board (Weleski Transfer, Inc.),* 809 A.2d 1088 (Pa.Cmwlth.2002).

However, in *Kiser,* this Court stated that a claimant seeking to review, modify, or reinstate workers' compensation benefits must do so within three years of the most recent payment of compensation. Once again, Claimant did not do that.