**Richard PALASCHAK, Petitioner**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (US AIR-
WAYS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 8, 2011.

Decided Jan. 23, 2012.

Michael P. Petro, Pittsburgh, for petitioner.

Christian M. Stein, Pittsburgh, for respondent US Airways.

BEFORE: LEADBETTER, President Judge,[1] and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.[2]

## OPINION BY Judge LEAVITT.

Richard Palaschak (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) refusing to reinstate his total disability benefits because his petition was untimely filed. The Board held that Claimant's request for reinstatement was untimely because it was filed more than 500 weeks after the date on which his disability benefits were suspended. Discerning no error in the Board's adjudication, we affirm.

### Background

■ Claimant sustained a neck injury on January 28, 1992, while performing his job as a mechanic with U.S. Airways (Employer). Claimant collected total disability benefits until February 5, 1996,[3] when he returned to his pre-injury job, with restrictions, after surgery to treat his neck injury. Claimant's full-time, modified-duty job paid wages equal to or greater than his pre-injury wages. Accordingly, Claimant's disability benefits were suspended on February 5, 1996.[4]

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. This case was decided before Judge Butler's term ended on January 2, 2012.

3. Claimant filed a petition for total disability benefits which was granted by a Workers' Compensation Judge (WCJ). However, the WCJ suspended benefits as of March 17, 1994. This Court reversed the suspension, concluding that Claimant was still disabled by his work injury in March of 1994. *Palaschak v. Workers' Compensation Appeal Board (US Airways)*, (Pa.Cmwlth., No. 574 CD. 2000, filed October 19, 2000).

4. The record does not include a supplemental agreement or notification of suspension. This is of no moment. The statute of limitations begins to run on the date the employer stops paying indemnity benefits because the claimant returns to work without a wage loss, even

Claimant continued to work for Employer until March 2006, when Claimant told Employer that his doctor had placed an additional restriction on Claimant, directing him to do only "bench work." Reproduced Record at 102a (R.R. ___). Employer replied that it could not accommodate this restriction and, as a result, it had no more work for Claimant.

On April 21, 2006, Claimant filed a reinstatement petition, alleging that his 1992 work injury had caused a loss of earning power as of March 2006. Claimant also filed a modification petition alleging that his work injury had caused him to miss work at various times between February 1996 and March 2006 but he had not been paid disability during those absences. Employer filed answers denying the factual allegations and asserting that Claimant's petitions were time-barred. Claimant then filed a claim petition alleging that he sustained a new work-related neck injury on March 15, 2006; Employer denied this allegation. Claimant's petitions were consolidated and assigned to a WCJ, who conducted several hearings.

Claimant testified that before sustaining his 1992 neck injury, he had worked on aircraft in the main hangar bay doing heavy work with sheet metal. Claimant explained that after his surgery for his work injury, his physician released him to do light-duty work, with no lifting over 35 pounds and no overhead work. When Claimant returned to work on February 5, 1996, it was to a light-duty job working on

small aircraft parts in the shop at a bench. Whenever there was no bench work to be done, Claimant was assigned to tidy up the shop.

In March 2005, Employer assigned Claimant to the overhaul bay working in cargo bins and lavatories of airplanes. This job involved crawling, twisting and reaching, which Claimant stated caused pain in his neck as well as numbness and tingling in his arms. Claimant complained to Employer, and it returned him to the shop area in May 2005. However, from time to time, Employer continued to assign Claimant to work in the overhaul bay.

On March 17, 2006, Claimant informed Employer that his physician directed him to do only "bench work." After reviewing the physician's report, Employer informed Claimant that it was placing him on unpaid leave because it could not accommodate his physician's restriction.[5] Claimant has not worked since then, and he continues to suffer pain in his neck and arms.

Claimant presented the deposition testimony of Gin–Ming Hsu, M.D., who is board certified in physical medicine and rehabilitation with a subspecialty in pain management. Dr. Hsu explained that he became Claimant's treating physician in March 1999, after Claimant's prior physician retired. Dr. Hsu described Claimant's 1992 work injury as a herniated cervical disc that was treated with decompression surgery. Dr. Hsu diagnosed

if benefits are never formally suspended. *Bellows v. Workmen's Compensation Appeal Board (Shabloski)*, 663 A.2d 267 (Pa.Cmwlth. 1995).

5. Employer notified Claimant of its decision by letter of March 23, 2006. The letter states, in relevant part, as follows:

> On 03/17/06, Dr. Hsu, has given you new restrictions for light duty work as a result of an occupational injury. US Airways has made every effort to accommodate the work restrictions that the physician had previously set for you. In a recent review of your injury and current work restrictions, the Company has determined that we can no longer accommodate your work restrictions. Therefore, you are being placed on an unpaid occupational injury leave, effective immediately.
>
> R.R. 9a.

Claimant with chronic neck pain; cervical radiculopathy causing pain in his left arm; and myofascial pain syndrome. All have been treated with pain medication. Claimant's symptoms, treatment, diagnosis and restrictions have remained relatively unchanged since 1994. Claimant told Dr. Hsu that in February 2006 he experienced an exacerbation of his pain while working, which gave Dr. Hsu the impression that Claimant's work duties changed. Accordingly, Dr. Hsu opined that Claimant had sustained a new work injury, and he restricted Claimant to bench work. However, Dr. Hsu clarified that Claimant did not have to work only at a bench; rather, it was his view that Claimant should avoid activities that exacerbate his pain.[6]

Employer presented the deposition testimony of James L. Cosgrove, M.D., who is board certified in physical medicine and rehabilitation with specialization in chronic pain management. Dr. Cosgrove performed an independent medical examination (IME) of Claimant on October 9, 2007, and he reviewed Claimant's history and medical records. Dr. Cosgrove acknowledged that Claimant continued to experience neck and left arm pain as a result of his 1992 work injury, but he believed that Claimant was capable of working full-time at a wide range of light and medium-level work positions. Dr. Cosgrove saw no evidence that Claimant suffered a new injury, aggravation or any worsening of his condition in early 2006. If anything, Claimant's condition had improved over time because he was taking less medication. Dr. Cosgrove saw no evidence of radiculopathy during the IME.

■ The WCJ accepted the testimony of Dr. Cosgrove over that of Dr. Hsu and Claimant.[7] The WCJ found that the medical evidence showed that Claimant's symptoms, diagnosis, treatment, restrictions and physical capabilities remained unchanged from 1999 to the present. As a result, the WCJ found that Claimant did not sustain a new injury in 2006. The WCJ acknowledged that Dr. Hsu limited Claimant to bench work in March 2006, but the WCJ was unable to reconcile that restriction with Dr. Hsu's testimony that Claimant did not have to work only at a bench. The WCJ also found that although Claimant claimed to have suffered a loss of earnings after returning to work in February 1996, he did not offer any evidence to support that claim; Claimant did not offer the dates of his absences or the dollar amount of outstanding disability benefits.

The WCJ denied the claim petition, holding that Claimant did not sustain a new injury in 2006. The WCJ denied the reinstatement and modification petitions, concluding that they were time-barred because Claimant filed them more than 500 weeks after his benefits had been suspended. Claimant appealed, and the Board affirmed. Claimant now petitions this Court for review.[8]

---

6. Specifically, Dr. Hsu testified:

   So I'm not, by any means, saying that [Claimant] needs to be stuck to a bench.

   \* \* \*

   ... I am not trying to say that wherever he works he must have a bench ... [or] that he needs to be attached to a bench in order to work.

   R.R. 218a, 222a–223a.

7. The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth.1995).

8. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation*

## Petition for Review

Claimant raises one issue for our consideration. He asserts that the WCJ and the Board erred in dismissing his reinstatement petition as time-barred.[9] Claimant argues that he became totally disabled in March of 2006 and that there is no time bar to a claimant's right to seek total disability benefits. In the alternative, Claimant contends that because Employer conferred a benefit on him by providing him with a modified-duty job, he should be given three years from the date that benefit terminated to seek a reinstatement of total disability benefits.

Employer rejoins that the Workers' Compensation Act[10] (Act) is quite clear that a claimant whose benefits have been suspended may seek reinstatement so long as the reinstatement is filed within 500 weeks of the last payment of disability. Claimant's last disability payment was in February 1996 and, thus, his March 2006 reinstatement petition was time-barred. In the alternative, Employer asserts that even if Claimant's petition was not time-barred, he failed to meet his burden of proof for a reinstatement of his benefits.

## Analysis

We begin with a review of the concepts of disability and suspension of benefits. Each affects the appropriate statute of limitations here.

■ In workers' compensation, the term "disability" is synonymous with a loss of earning power attributable to the work injury. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board*

*(Costello)*, 560 Pa. 618, 625, 747 A.2d 850, 854 (2000). This means that "'we determine the degree of a worker's disability by reference to how the injury affected his *earnings*,' as opposed to looking to the extent of the employee's physical injuries." *Id.* (quoting *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 248, 532 A.2d 374, 378 (1987)) (emphasis added). If an injured employee can no longer earn wages because of his work injury, he is considered totally disabled. *Kmart v. Workers' Compensation Appeal Board (Williams)*, 771 A.2d 82, 85 (Pa.Cmwlth.2001).

■ When an injured employee returns to work earning wages equal to or in excess of his pre-injury wages, but continues to suffer residual effects of the work injury, the claimant's benefits will be suspended. *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259, 261 (Pa.Cmwlth.1997). In a suspension, the employer must continue to pay medical expenses incurred in the treatment of the work injury even though the employee is not paid disability. *Keystone Coal Mining Corporation v. Workers' Compensation Appeal Board (Fink)*, 896 A.2d 691, 695, 697 (Pa.Cmwlth.2006). On the other hand, if the injured employee returns to a job making less than his pre-injury wages, either because the job pays less or because he cannot work as many hours because of the residual effects of his work injury, the employee is entitled to partial disability, which pays two-thirds of the difference between his pre-injury and

---

*Appeal Board (Brown )*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

**9.** Claimant does not appeal the denial of his claim petition, acknowledging that the WCJ rendered a credibility determination against his evidence. Further, Claimant does not appeal from the determination that he failed to

prove that he had any work-related disability between February 1996 and March 2006. Claimant confines his appeal to the issue of whether he was time-barred from seeking total disability benefits as of March 2006.

**10.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

current wages. *Eljer Industries v. Workers' Compensation Appeal Board (Evans),* 707 A.2d 564, 568 (Pa.Cmwlth.1998). Under Section 306(b)(1) of the Act, 77 P.S. § 512(1), compensation for partial disability is capped at 500 weeks, which is 9.6 years.[11] *Mazuka v. Workmen's Compensation Appeal Board (Bechtel Power Corp.),* 166 Pa.Cmwlth. 105, 646 A.2d 47, 51 (1994).

The Act sets time limits to a claimant's ability to seek a reinstatement to total disability. Those time limits are different, depending on whether the claimant seeking reinstatement has had his total disability benefits suspended or had them reduced to partial disability.

■ The second paragraph of Section 413(a) of the Act states, in relevant part, as follows:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily

or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That, except in the case of eye injuries, *no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition....* And provided further, That *where compensation has been suspended because the employee's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable,* unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772 (emphasis added). In sum, the general rule in Section 413(a) is that a reinstatement petition must be filed "within three years of the most recent payment of compensation." *Id.* The "provided further" sentence establishes a different time limit for claimants whose benefits have been suspended. They may seek reinstatement "at any time during the period for which compensation for partial disability is payable." *Id.* In other words, claimants whose benefits have been suspended have 9.6 years from the date of their last payment of compensation to seek reinstatement.

■ In his first argument, Claimant points out that payments for total disabili-

11. Section 306(b)(1) states, in relevant part, that partial disability benefits

shall be paid during the period of such partial disability ... but for not more than five hundred weeks.

77 P.S. § 512(1). The Act, then, does not provide infinite compensation for a partially disabled claimant, even if that claimant never regains the ability to earn his pre-injury wage.

Therefore, a claimant who remains partially disabled after 500 weeks is not entitled to any more wage loss benefits for that partial disability. *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.),* 651 A.2d 1178, 1181 (Pa.Cmwlth.1994), *abrogated on other grounds by Stanek v. Worker's Compensation Appeal Board (Greenwich Collieries),* 562 Pa. 411, 756 A.2d 661 (2000).

ty are not limited to 500 weeks but, rather, are payable for the duration of the total disability. *Ford Motor/Visteon Systems v. Workers' Compensation Appeal Board (Gerlach)*, 970 A.2d 517, 519 (Pa.Cmwlth. 2009). Because a claimant on partial disability can have his total disability compensation reinstated up to three years after expiration of 500 weeks of partial disability, Claimant argues that, likewise, a claimant whose benefits have been suspended should be able to seek reinstatement within that deadline. In support, he cites to *Stewart v. Workers' Compensation Appeal Board (Pa. Glass Sand/US Silica)*, 562 Pa. 401, 756 A.2d 655 (2000), and *Stanek v. Worker's Compensation Appeal Board (Greenwich Collieries)*, 562 Pa. 411, 756 A.2d 661 (2000).

*Stewart* and *Stanek* are inapposite. Each involved claimants who received 500 weeks of partial disability benefits and thereafter sought a reinstatement of total disability within three years of receiving the last payment of compensation when their physical condition worsened.

In *Stewart,* the Supreme Court held that a claimant who had received 500 weeks of partial disability benefits was eligible to seek a reinstatement because he filed his petition, within three years after the final payment of partial disability. His petition was timely. In *Stanek,* the issue was a claimant's burden of proof in a reinstatement petition. The Supreme Court held that the claimant must establish, *inter alia,* that his condition has worsened to make his case for reinstatement.

Here, Claimant did not receive 500 weeks of partial disability payments. He has not received any disability compensation since February 5, 1996, when he returned to work with no wage loss. Accordingly, this case is governed by the last sentence of the second paragraph of Section 413(a), which gave Claimant, whose benefits were in suspension status, the right to seek reinstatement, so long as he did so within 500 weeks of the suspension date. This is a point well established in the case law.

In *Roussos v. Workmen's Compensation Appeal Board (St. Vincent Health Center)*, 157 Pa.Cmwlth. 584, 630 A.2d 555 (1993), this Court held that where compensation benefits have been suspended, a reinstatement petition must be filed within 500 weeks of the effective date of the suspension. Likewise, in *Deppenbrook v. Workmen's Compensation Appeal Board (Republic Steel Corporation)*, 655 A.2d 1072 (Pa.Cmwlth.1995), we held that the claimant's reinstatement petition seeking specific loss benefits was time-barred because it was filed more than 500 weeks after disability benefits had been suspended. We explained that the purpose of the 500–week limitation period is to avoid the "inconvenience and prejudice resulting from deciding stale cases on stale evidence." *Id.* at 1074 (quoting *Bellefonte School District v. Workmen's Compensation Appeal Board (Morgan)*, 156 Pa.Cmwlth. 304, 627 A.2d 250, 253 (1993)). We rejected the claimant's assertion that he should have 500 weeks plus an additional three years to file his reinstatement petition, stating:

> We have unambiguously held that Section 413's three year limitation "is *totally inapplicable* where there has been a suspension, which is addressed in the last proviso of Section 413."

*Deppenbrook,* 655 A.2d at 1074 (quoting *USX Corporation v. Workmen's Compensation Appeal Board (Guthrie)*, 132 Pa. Cmwlth. 54, 571 A.2d 1112, 1114 (1990)) (emphasis in original). In *Bellows v. Workmen's Compensation Appeal Board (Shabloski)*, 663 A.2d 267, 270 (Pa.Cmwlth. 1995), we held that a claimant was time-barred from seeking a reinstatement almost 12 years after he returned to work,

noting that "[t]he Act grants a claimant a liberal period of over nine years" to seek reinstatement.

*Edgewater Steel Company v. Workers' Compensation Appeal Board (Beers)*, 719 A.2d 812 (Pa.Cmwlth.1998), is factually on point with this case. In *Edgewater Steel,* the claimant was injured while working as a crane brakeman. He returned to work in March 1979 as a truck driver with lifting restrictions, and his disability benefits were suspended. Although he continued to suffer a residual physical disability, it did not cause a loss of earning power. In January 1993, the claimant's doctor imposed further lifting restrictions, at which point the employer laid him off because it could not accommodate the new restrictions. The claimant filed for a reinstatement, and the employer asserted the 500–week statute of limitations as a defense. This Court agreed with employer that the reinstatement petition was time-barred under the last sentence of Section 413(a) because the claimant had worked at a restricted position for almost 14 years and, as such, "received all of the benefits to which he was entitled under the Act." *Id.* at 815.

In *Stewart,* 562 Pa. 401, 756 A.2d 655, our Supreme Court questioned our rationale in these cases as well as the logic of Section 413(a). *Stewart* involved a claimant who had received partial disability benefits for 500 weeks and then sought reinstatement of total disability benefits five months after the last payment of partial disability benefits. The employer tried to impose the Section 413(a) time limit for claimants on suspension to the claimant's reinstatement petition. The employer argued that there was no reason for treating claimants, who were injured but able to earn their pre-injury wages, differently from claimants who remain injured and able to earn some wages.

The Supreme Court agreed with the employer that the legislature's policy decision to treat claimants whose benefits were suspended differently from claimants who worked at a wage loss was difficult to understand. It explained:

> [W]e perceive no apparent sound policy justification for distinguishing between partially-disabled claimants who have received a full complement of partial disability benefits and those who have experienced some period of suspension, in terms of the effect of the expiration of 500 weeks upon potential future claims. *We decline to resolve this question in the present appeal, however, since the appropriate facts are not before us;* we merely note that the opinion in this case should not be read as an endorsement of the pertinent reasoning from *Edgewater, Deppenbrook and Roussos.*

*Stewart,* 562 Pa. at 407 n. 5, 756 A.2d at 658 n. 5 (emphasis added). The Supreme Court was especially concerned about "cases in which the claimant has received partial disability benefits as well as experienced suspension of benefits in various time increments throughout the pertinent 500–week period." *Id.* at 407, 756 A.2d at 658.[12]

However, the Supreme Court rejected the employer's argument. It held that, notwithstanding the strange policy decision of the legislature, the plain language of Section 413(a) allowed the claimant to seek a reinstatement even though the "pertinent 500–week period" had passed. The claimant had three years from the end

---

12. The Court noted that the 500–week period begins running on the earlier of the commencement of partial disability payments or suspension. *Id.* at 407 n. 4, 756 A.2d at 658 n. 4.

of that 500–week period to seek reinstatement.

This Court has continued to rely upon the plain language of Section 413(a), as we did in *Edgewater*. In *Cicchiello v. Workers' Compensation Appeal Board (Frank L. Markel Corporation)*, 761 A.2d 210 (Pa. Cmwlth.2000), *appeal denied*, 566 Pa. 649, 781 A.2d 148 (2001), which was filed three months after *Stewart*, we held that the 500–week limit for filing for reinstatement after a suspension is a "statute of repose [which] not only limits a remedy, but also completely and totally extinguishes a claimant's right to benefits in the first instance." *Id.* at 212–213. Notably, the Supreme Court declined to grant *allocatur* in *Cicchiello*, 761 A.2d 210, *appeal denied*, 566 Pa. 649, 781 A.2d 148 (2001).

More recently, we reached this same conclusion in *Prosick v. Workers' Compensation Appeal Board (Hershey Chocolate USA)*, 936 A.2d 177 (Pa.Cmwlth.2007), where the claimant's work restrictions could not be accommodated by his employer. In concluding that the claimant's petition was time-barred, we reviewed the analysis in *Stewart* and *Stanek*, wherein the statute of limitations for claimants in suspension status was criticized. We concluded, however, that there was no path around the plain language of Section 413(a) of the Act. We explained as follows:

> The "provisions of the Act result from a legislative effort to balance benefits and burdens as between employers and employees, advantaging claimants, for instance, with compensation for work-related injuries without the necessity of establishing liability in tort." *Stanek*, 562 Pa. at 424 n. 10, 756 A.2d at 668 n. 10. While the provisions of the Act impose a hardship upon Claimant, this Court like our Pennsylvania Supreme Court in *Stanek* must give effect to the General Assembly's intent.

*Id.* at 183 (footnote omitted).

*Prosick* was followed by *Stehr v. Workers' Compensation Appeal Board (Alcoa)*, 936 A.2d 570 (Pa.Cmwlth.2007). In holding the claimant's reinstatement petition to be time-barred we observed:

> While it is difficult to discern a sound policy reason for distinguishing between employees who were partially disabled but whose post-injury earnings warranted a suspension of benefits and those who were partially disabled and were entitled to partial disability benefits, we cannot disregard the express limitation contained in Section 413(a) of the Act itself.

*Id.* at 572 (footnote omitted). We addressed the Supreme Court's concerns raised in *Stewart*, noting that the claimant "was in suspension status during the entire allotment of five-hundred weeks.... This case is squarely governed by the final sentence of Section 413(a) of the Act." *Id.* at 572 n. 3. *See also Romanowski v. Workers' Compensation Appeal Board (Precision Coil Processing)*, 944 A.2d 127 (Pa. Cmwlth.2008).

In *Stewart*, the Supreme Court criticized the fact that Section 413(a) gives claimants on partial disability a longer period of time to seek reinstatement than it gives claimants whose disability has been suspended. It may be that the Supreme Court was inviting the legislature to take another look at its policy decision. Its specific concern was directed to the claimant with a history of suspensions and partial disability; those facts are not presented here. In any case, the holding in *Stewart* was that the plain language of Section 413(a) must be followed, and, steadfastly, we have done so. We have declined to deviate from the legislature's express directive that to seek a reinstatement, a claimant on suspension

must file his petition within 500 weeks of the payment of compensation.

Our *post-Stewart* jurisprudence has conformed to the principle that where "the words of a statute are clear and unambiguous, this Court cannot disregard them under the pretext of pursuing the spirit of the statute." *Rogele, Inc. v. Workers' Compensation Appeal Board (Mattson)*, 969 A.2d 634, 637 (Pa.Cmwlth.2009) (quoting *Middletown Township v. Lands of Stone*, 595 Pa. 607, 616, 939 A.2d 331, 337 (2007)). To the extent that Section 413(a)'s statute of limitations could be construed as unfair in some cases, this Court has very aptly stated:

> Though the periods of limitations found in the Act may require harsh results in some cases, *we may not disregard what appears to be the plain language of the Act* absent fraud or misrepresentation. *Any enlargement of the 500 week limitations period is for the Legislature.*

*Bellows*, 663 A.2d at 270 (emphasis added).

■ Claimant ignores the plain language of Section 413(a) as well as this Court's extensive precedent. Instead, Claimant offers a novel interpretation of Section 413(a). Claimant points out that he never recovered enough to return to his pre-injury mechanic job without restrictions; instead, he performed a light-duty mechanic job for over ten years. Claimant argues that Employer's light-duty job was a form of "compensation." Accordingly, Claimant should have had three years to seek a reinstatement of total disability benefits after his "compensation" job ended in March 2006.

Employer responds that the type of work Claimant was performing prior to seeking reinstatement is irrelevant. The Act speaks only to the amount of the claimant's wage loss benefits, not the type of work he was performing. We agree with Employer.

■ The Act does not define the term "compensation." *O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital)*, 690 A.2d 1262, 1264 (Pa. Cmwlth.1997). What constitutes compensation "must be made on a section-by-section basis, looking to the language of the section and the legislative intent behind it." *Id.* We have not previously considered whether a light-duty job constitutes "compensation." However, we have specifically held that medical payments do not constitute "compensation" for purposes of Section 413(a) and, therefore, do not toll the statute of limitations for seeking to modify or reinstate benefits. *Id.* at 1265.

In *O'Brien*, the parties agreed that the claimant would be entitled to partial disability benefits for 411 weeks. The parties commuted those benefits, so that the claimant received them in a lump sum check instead of over 411 weeks. More than three years after receiving her commutation check, the claimant filed for reinstatement of her total disability benefits, alleging that her medical condition had worsened. The claimant argued that her petition was not time-barred by Section 413(a) because: (1) the employer paid her medical expenses, a type of "compensation," up to the filing of the reinstatement petition and (2) the parties had agreed that the claimant would experience an ongoing partial disability for 411 weeks, so the three-year period should not begin until the end of the 411 weeks. This Court disagreed. We explained that the employer is liable to pay medical expenses independent of disability benefits and, were claimant's logic to be accepted, then the statute of limitations for reinstating disability benefits would never expire. We held that the three-year statute of limitations began to run on the date the claimant received her commutation check. Stated

otherwise, disability benefits constitute the "compensation" that triggers the running of the limitations period.

Claimant's novel theory cannot be reconciled with our analysis in *O'Brien.* Further, it cannot be reconciled with the operative language of Section 413(a), which speaks to those whose *"compensation* has been *suspended* because the employe's *earnings* are equal to or in excess of his *wages."* 77 P.S. § 772 (emphasis added). It is obvious from this context that "compensation" means payment for "wage loss."

Finally, there is no language in the Act to support Claimant's theory that payment of real wages for doing a light-duty job is a type of "compensation." The Act does not speak to the kind of job a claimant performs, but only his *earnings.* If this Court were to accept Claimant's argument, then the statute of limitations would never expire as long as there was a light-duty job available to a claimant. This would treat a claimant who returned to his pre-injury job differently than a claimant who returned to a light-duty job with restrictions. The former would be subject to the 500–week limitation upon his return to work and the latter would not. In workers' compensation, however, it is not the claimant's level of injury that is controlling but, rather, how his residual injury affects his earnings. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello),* 560 Pa. 618, 625, 747 A.2d 850, 854 (2000).

■ In any case, we agree with Employer that even if Claimant's reinstatement petition had not been time-barred, his evidence did not prove a right to reinstatement. Our Supreme Court has held that if a claimant is working after 500 weeks and up to the time he seeks reinstatement, he must prove that he has an "increased, work-related impairment" that precludes the continuation of the light-duty employment. *Stanek,* 562 Pa. at 426, 756 A.2d at 669. Here, the WCJ rejected Claimant's evidence and found that Claimant's physical condition did not worsen in 2006 nor did he require the additional bench work restriction. As such, Claimant could not meet his burden of proof for a reinstatement of total disability benefits, had his petition not been time-barred.

## Conclusion

In Section 413(a), the General Assembly decided not to allow claimants an indefinite period of time for seeking a reinstatement to total disability. It created a statute of limitations that is tied to the claimant's receipt of disability benefits and not to the type of job he does upon return to work. Because Claimant filed his reinstatement petition more than 500 weeks after his benefits were suspended because he returned to work with no loss of wages, it is time-barred. Accordingly, we affirm the Board's adjudication.

## ORDER

AND NOW, this 23rd day of January, 2012, the order of the Workers' Compensation Appeal Board dated July 20, 2010, in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision to affirm the Board's denial of benefits for Richard Palaschak (Claimant) because 500 weeks had passed when he filed his reinstatement petition. He was on light-duty work when more than 500 weeks had passed from the suspension of his benefits, and he was forced to leave his job, both distinctions that the majority discounts when denying benefits.

The pertinent facts of this case are that Claimant was injured at work in 1987 while working for U.S. Airways (Employer). He aggravated the injury in 1992 and 1993 and had surgery. He returned to work in a light-duty capacity on February 5, 1996, at which time his benefits were suspended because he returned to work at equal or greater pay than he had made before his injury. Claimant continued to work for Employer, and in February 2005, there was a reorganization of the workplace. Claimant's light-duty position was modified and his position required crawling and turning causing increased pain in his neck. His treating physician restricted him to bench work, and in March 2006, due to pain, his physician placed an additional work restriction on him. Employer notified Claimant that it could not accommodate this restriction and that it had no more work available for him.

As a result, on April 19, 2006, Claimant filed a reinstatement petition alleging that his 1992 work injury had caused him a loss of earning power as of March 2006. He also filed a modification petition stating without explanation that "Claimant did not receive indemnity benefits for time missed as a result of work injury." (Reproduced Record at 13a.) The WCJ denied both of Claimant's petitions finding that Claimant did not suffer a new injury and that his previous condition had not worsened. Claimant appealed to the Board, which affirmed the WCJ's decision. He then appealed only the Board's denial of the reinstatement petition to this Court.

On appeal, Claimant contends the Board erred by dismissing his reinstatement petition under Sections 306(b) and 413(a) of the Workers' Compensation Act (Act)[1] because 500 weeks had passed since his return to work. Claimant argues that the 500–week restriction does not run when a claimant is removed from a light-duty position.[2] In response, Employer contends that the 500–week statute of repose acts as an absolute bar to any reinstatement or modification petition filed after it has elapsed in situations such as the present in which workers' compensation benefits were suspended following a return to work with no loss of earnings. Employer further argues that even if Claimant's reinstatement petition was not time-barred, the WCJ found that Claimant's condition had not worsened, requiring denial of his reinstatement petition.

The majority agrees with Employer, first reciting Section 413(a) of the Act for

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(1). Section 306(b) of the Act provides, in relevant part: "For disability partial in character caused by the compensable injury or disease.... This compensation shall be paid during the period of such partial disability ... but for not more than five hundred weeks."

Section 413(a) of the Act, 77 P.S. § 772, in turn provides, in relevant part, "That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable."

2. Claimant couches the relief he seeks as "total disability" arguing that Section 413(a)

only applies to cases of partial disability. While it is true that the Act treats post–500–week partial and total disability differently, Claimant uses the term "total disability" to mean that his light-duty position was removed, not that his earning ability has been reduced to zero because his injury had worsened to such an extent that he could never work again. On the contrary, Claimant never disputes that he could have continued to work in the same light-duty position he had from 1996 to early 2005. These are two different scenarios requiring different analyses. What Claimant describes as "total disability" is more accurately characterized as loss of employment due to the removal of light-duty work, and we will refer to it as such.

the proposition that Claimant's reinstatement petition was not timely filed within 500 weeks after returning to work with no loss of wages, i.e., the suspension of his benefits. The majority then goes on to address Claimant's argument that payments for total disability are not limited to 500 weeks but are payable for the duration of the total disability. "Because a claimant on partial disability can have his total disability compensation reinstated up to three years after expiration of 500 weeks of partial disability, Claimant argues that, likewise, a claimant whose benefits have been suspended should be able to seek reinstatement within that deadline." (Majority opinion at 1249.) The majority discounts this argument stating that Claimant did not receive 500 weeks of partial disability payments because he did not receive any disability compensation since February 1996 when he returned to work with no wage loss.

Several of this Court's opinions have dealt with this issue under the same or similar factual scenarios, all coming to the conclusion that the claimant was not eligible for benefits because his reinstatement petition was time-barred. The majority relies on *Edgewater Steel Co. v. Workmen's Compensation Appeal Board (Beers)*, 719 A.2d 812 (Pa.Cmwlth.1998), because it is factually on point with this case. *See also Bellows v. Workmen's Compensation Appeal Board (Shabloski)*, 663 A.2d 267 (Pa.Cmwlth.1995); *Deppenbrook v. Workmen's Compensation Appeal Board (Republic Steel Corporation)*, 655 A.2d 1072 (Pa.Cmwlth.1995); *Roussos v. Workmen's Compensation Appeal Board (St. Vincent Health Center)*, 157 Pa. Cmwlth. 584, 630 A.2d 555 (1993).

Not disagreeing with the majority that *Edgewater Steel Co.* is on point, subsequent to that case and the others mentioned, our Supreme Court decided *Stewart v. Workers' Compensation Appeal Board (Pa. Glass Sand/US Silica)*, 562 Pa. 401, 756 A.2d 655 (2000), upon which Claimant relies.

*Stewart* dealt with a different factual scenario, in which the claimant had been out of work on partial disability for more than 500 weeks. He sought to modify his benefits to total disability based on a deterioration of his condition which rendered him completely unable to work. In addressing this different factual scenario, however, our Supreme Court embarked on a global examination of prior jurisprudence interpreting Section 413(a) and criticized much of the prior case law. Included in this examination was a detailed discussion of *Edgewater Steel* upon which the majority relies. To understand that discussion, it is necessary to quote from *Stewart* at some length:

> In interpreting the final sentence of Section 413(a), the Commonwealth Court has long drawn a distinction between claimants who have received the full statutory allotment of partial disability benefits, and those whose benefits were suspended during the applicable 500-week period based upon their ability to generate a pre-injury wage. As to the former category (those who have received partial disability benefits for 500 weeks) [that is, the facts in *Stewart*], the Commonwealth Court's published opinions consistently indicate that total disability benefits are in fact available upon demonstration of deterioration in the claimant's condition, and subject to Section 413(a)'s three-year limitation commencing upon receipt of the final payment of partial disability compensation. [Citations omitted.] With respect to the latter category (suspension because the claimant has regained the ability to generate his pre-injury earnings) [that is, the facts in the instant matter],

the Commonwealth Court has consistently found that expiration of the 500–week period operates as a bar to the assertion of a subsequent claim for total disability benefits. *See, e.g., Edgewater Steel Co. v. WCAB (Beers),* 719 A.2d 812, 814 (Pa.Cmwlth.1998); *Deppenbrook v. WCAB (Republic Steel Corp.),* 655 A.2d 1072, 1075–76 (Pa.Cmwlth. 1995); *Roussos v. WCAB (St. Vincent Health Center),* 157 Pa.Cmwlth. 584, 587–88, 630 A.2d 555, 557 (1993).

[W]e are unable to discern a sound policy reason for distinguishing between employees who are partially disabled but whose post-injury earnings ability requires a suspension of benefits, and those who are also partially disabled but whose earnings result in the affordance of partial disability benefits, in terms of who should be deemed entitled to seek total disability compensation after the expiration of 500 weeks. Additionally, such distinction would appear difficult to maintain in cases in which the claimant has received partial disability benefits as well as experienced suspension of benefits in various time increments throughout the pertinent 500–week period. Nevertheless, we are not free to disregard the express limitation in scope attached to the final sentence of Section 413(a) under the pretext of pursuing the spirit of the enactment. 1 Pa.C.S. § 1921(b). As important, we are not convinced that the legislative purpose underlying Section 413(a) would support Employer's interpretation. Indeed, the unexplained disparity in treatment between claimants based upon the extent to which their disabilities have abated during the 500–week period would seem to present a more appropriate basis for questioning those decisions which interpret the expiration of the 500–week period as a bar to the assertion of total disability claims by employees who have

experienced a suspension of benefits (for example, *Edgewater, Deppenbrook* and *Roussos* ), since such construction is less solidly grounded in the plain meaning of Section 413(a).[5]

*Stewart* at 405–07, 756 A.2d at 657–58.

In footnote five, the Supreme Court went on to explain:

The final sentence of Section 413(a) expressly indicates what is permissible during the 500–week period related to claims in suspension, namely, resumption of benefits. Thus, its primary direct application is to permit a claimant whose benefits are in suspension to avoid the effect of Section 413(a)'s three-year limitations period applicable to claimant whose benefits have been *terminated.* [Emphasis in original.] ... Certainly by implication, the statute also requires that periods of suspension be included within the 500–week calculation for purposes of determining when partial disability benefits have expired. [Citations omitted.] A further inference is required, however, to support the conclusion that all post–500–week claims (including those for total disability) on the part of a claimant whose benefits have been suspended are precluded. Moreover, as noted, this would not appear to be as reasoned an inference, as we perceive no apparent sound policy justification for distinguishing between partially-disabled claimants who have received a full complement of partial disability benefits and those who have experienced some period of suspension, in terms of the effect of the expiration of 500 weeks upon potential future claims. *We decline to resolve this question in the present appeal, however, since the appropriate facts are not before us; we merely note that the opinion in this case should not be read as an endorsement of*

*the pertinent reasoning from Edge-water, Deppenbrook, and Roussos.*

*Id.* at 407 n. 5, 756 A.2d at 658 n. 5 (emphasis added). It appears, then, that the Supreme Court went as far as it could to disavow *Edgewater* et al. given that it could not explicitly overturn them because the necessary facts were not before it.

While it did not explicitly overturn those cases, in the paragraph immediately following its criticism of this Court's relevant jurisprudence, the Supreme Court laid out its global template for dealing with post–500-week reinstatement or modification petitions depending on the disability level and work status of the claimant:

Significantly, an employee with a fixed and stable, but partially-disabling, condition may receive the protection of a substantial period of subsidy (approximately nine and one-half years), within which to adjust to his disability and maximize his earning capacity consistent with his physical limitations. At a minimum, assuming no worsening of the employee's condition, the employee retains his physical capacity to generate the amount of earnings previously subject to supplementation. *The same cannot be said, however, where* an employee's condition deteriorates to the point of total disability, or *work within the claimant's restrictions ceases to be available,* such that the employee no longer retains the ability to support himself and his dependents in any fashion. Since these circumstances diverge substantially in terms of the impact of cessation of benefits upon the injured employee, it is not surprising that the legislative scheme of compensation allows for differential treatment.

*Id.* at 408–09, 756 A.2d at 659 (emphasis added).

In instructing us how to deal with the 500-week rule, our Supreme Court laid out how Section 413(a) applied to three different scenarios. First, claimants who received partial disability payments during the 500-week period and who were still on partial disability at the end of that period had their benefits terminated at the end of 500 weeks. Second, claimants whose conditions deteriorate to the point of total disability were not subject to the 500-week restriction.[3] Third, relevant to this case, claimants whose light-duty positions ceased to be available, as in the instant matter, were also not subject to the 500-week restriction.

The rationale for exempting claimants whose light-duty jobs were eliminated from the 500-week limitations period also flowed logically from the Act and was consistent with its remedial purposes. Light-duty jobs are remedial in nature, designed to allow employees who are partially disabled as a result of a work injury to retain some level of economic productivity. However, these jobs are often specially created for the injured employee, and may or may not exist in the marketplace at large. This means that the earning power of light-duty employees is untested and unknown; it may (or may not) be zero, just the same as for a totally disabled individual, who is also not subject to the 500-week limitation.

The majority ignores all of this language and instead states: "Nevertheless, this Court has continued to rely upon the plain language of Section 413(a) as we did in *Edgewater.* In *Cicchiello v. Workmen's Compensation Appeal Board (Frank L.*

---

3. The Board relied on *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries),* 562 Pa. 411, 756 A.2d 661 (2000), decided simultaneously with *Stewart. Stanek* is not applicable to this case because it is under the second scenario while the present case falls under the third scenario.

*Markel Corporation)*, 761 A.2d 210 (Pa. Cmwlth.2000), *appeal denied,* 566 Pa. 649, 781 A.2d 148 (2001), which was filed three months after *Stewart,* we held that the 500–week limit for filing for reinstatement after a suspension is a 'statute of repose [which] not only limits a remedy, but also completely and totally extinguishes a claimant's right to benefits in the first instances.' " The majority, however, correctly notes that in that case, the claimant had a history of suspensions and partial disability and those facts are not present here. Notably, our Supreme Court declined to grant *allocatur* in *Cicchiello.*

In this case, contrary to the majority's decision, I believe the Board erred in dismissing Claimant's reinstatement petition because more than 500 weeks had passed since the suspension of his benefits and that limitation does not apply because a light-duty position was removed. That does not necessarily mean, however, that Claimant is entitled to have his compensation reinstated. At the same time, there is no doubt that Claimant remains partially disabled. Both Claimant's treating physician and Employer's physician, whom the WCJ deemed credible, agreed on this, and Employer's physician specifically stated that Claimant was limited to light-to-selected-medium-duty work in the same manner as he had been limited ever since he returned to work in 1996. Moreover, Claimant never quit his employment. He continued working through his pain (whether it had increased or not) until the moment he was placed on unpaid occupational injury leave, and there was never any indication that he planned to do otherwise in the future had he not been involuntarily placed on unpaid leave.

It is necessary to remand to the Board to determine if Claimant is capable of performing his job as it had been modified in 2005 and 2006 under his work restrictions as they were since his return to work in a light-duty capacity in 1996. If it is found upon remand that Claimant cannot perform the duties of his job as it had been modified in 2005 and 2006 under his 1996 work restrictions, he is entitled to workers' compensation payments at the pre-February 5, 1996 level retroactive to March 23, 2006, and continuing into the future. If it is found upon remand that Claimant is capable of performing that job under those conditions, Employer must offer Claimant his job back, and he is not entitled to workers' compensation benefits in the future unless Employer refuses to offer Claimant his old job. If Employer does offer Claimant his job back under this scenario, he still would be entitled to workers' compensation payments at the pre-February 5, 1996 level retroactive to March 23, 2006, until the date he returns to work or declines the job offer. Under either scenario, Employer also has the option, as always, of finding suitable alternative work for Claimant, who is only partially disabled.

For the foregoing reasons, I would reverse the Board and remand the matter to the Board for further proceedings.

Accordingly, I respectfully dissent.

Judge SIMPSON joins in this dissenting opinion.